# Dawson, Appellant, *v.* Pittsburgh.

*Streets—Land damages—Benefits—Assessments—Act of May* 16, 1891.

The act of May 16, 1891, P. L. 71, introduced no new rule for the estimation and measure of damages in the opening or change of grade of streets.   Before that act the practice was for viewers to report the result of their findings on the two matters of damages and benefits, as a single sum either damages or benefits, but not both.   Under the act of 1891 they report both matters separately, but the net result is the same.   The only effect of the change is to give the court primarily and the parties finally more information as to the steps by which the result was reached, and better opportunity to have it examined and reviewed.

Both before and since the act of May 16, 1891, each property owner concerned is entitled to have his case as a whole, both as to damages and benefits, separately and specially considered, and, in such consideration, the general increase in value from the development of the neighborhood is not such a local and special advantage to him as to be taken into account as part of the benefit to be assessed upon him.

*Evidence—Report of viewers—Charge of court.*

On an appeal from an assessment of damages for change of grade of a street, where both parties refer to the viewers' report as part of the case, the court is justified, whether the report was distinctly put in evidence or not, in calling the jury's attention to the assessment on plaintiff for benefits, and in telling them that unless the market value of her property was enhanced to that amount she should have damages.

*Evidence— Opinion of expert—Damages.*

An expert called to testify as to the change in the market value of property caused by change of grade of a street, may be permitted to state that the new grade left plaintiff's house in a depression, that one of the ways in which this disadvantage could be remedied would be by raising the house and filling in the ground, and that that process would not only be expensive, but would also entail the loss of valuable trees and shrubbery. Such matters are competent evidence not as in themselves items of dam-

age, but as elements bearing on the difference between the market values before and after the change of grade.

Such evidence is competent though the witness could not state the figures at which property in the neighborhood was held. A man may know the effect on the relative value without being able to fix the actual market price. Such evidence is admissible, at least in corroboration of others who may give definite figures.

*Evidence—Rebuttal—Report of viewers to contradict evidence of viewer.*

A report of viewers is admissible in evidence to show that one of the viewers, called as a witness, had signed the report, making an entirely different estimate of the effect of the improvement on plaintiff's land from that to which he testified at the trial.

Argued Nov. 8, 1893. Appeal, No. 284, Oct. T., 1893, by plaintiff, Susannah Dawson, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1892, No. 196, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from viewers assessing damages and benefits for change of grade of Westminster street in the city of Pittsburgh. Before McCLUNG, J.

At the trial it appeared that plaintiff was assessed by the viewers with the sum of $1,479.74 as benefits. Various witnesses testified as to damages.

When William A. Dawson, a witness for plaintiff, was on the stand, he was asked:

" Q. What is there in the change of grade and other improvements there that affects the value of your property? A. Well we will have to fill up the lot and raise our house and place, our walks and drives, to place them on an equal with the street. Q. What effect, do you know, would that have on your shrubbery and trees, etc.? A. I understand we would lose them all. Q. Are they valuable? A. Yes, sir. Q. Are the shrubbery and trees and things of that sort on your place valuable? A. Yes, sir. Q. It would practically destroy them by filling, would it? A. So I understand from florists and men that know about trees; we would lose them all. Q. What estimate have you of their value?" Objected to as incompetent and irrelevant. Objection sustained and bill sealed. [1]

" Q. Leaving out of the question, Mr. Dawson, any benefits by reason of the paving of Westminster street and taking into

consideration the injury to your mother's lot by the change in the grade, what, in your judgment, and so far as you have been able to ascertain, as you say you made inquiries into the subject, would be the amount of your mother's damage there?" Objected to as incompetent and irrelevant. Objection sustained and bill sealed. [2]

"Q. State to what extent your mother's property was injured by reason of the change in the grade on Westminster street, Mr. Dawson?" Objected to by counsel for defendant as incompetent and irrelevant. By the Court: It is evident that the question is not understood by the witness as involving the true measure of damages indicated by the court, and the objection is therefore sustained. The objection is sustained with a view of confining the estimated damage to the difference in the market value before and after improvement. We will allow that to be shown. [3]

"Q. Have you inquired into and obtained data upon which to base an estimate of what expense your mother would be put to to put the lot and the property in relatively the same condition and position with reference to the present grade of the street as it was before? A. Yes, sir. Q. Now, Mr. Dawson, will you state what that is?" Objected to. Objection sustained and bill sealed. [4]

"Q. Mr. Dawson, what in your judgment is the difference between the value of that property of your mother's where you live, improved as it is now, on the old grade instead of the present grade, from what the property would be worth with the improvements at the present grade?" Objected to. Objection sustained and bill sealed. [5]

"By Mr. Woodward: I propose to prove that by the change of grade this property is injured, without regard to any benefits the property received from the paving. I assume that it don't matter if the property was paved on the original grade. Of course, there wouldn't be any damage from the paving. If the property has been damaged by the grade, then the damage done by the grading, whatever it is, we have a right to recover, irrespective of whether the property is benefited by the paving or not. By the Court: Q. Did the viewers assess you for paving? A. Yes, sir. Q. Is the assessment unappealed from for paving? By Mr. Woodward: A. The question as to the ben-

efits for paving have been disposed of; they have been confirmed by your honors; so that that has nothing to do with and is not involved in this case. By the Court: Q. If this party was allowed what she would otherwise be assessed for paving as damages for change of grade, then she has got it once. Has this party been assessed for benefits? A. Yes, sir; and it has been settled by your Honor's decree. By the Court: The appeal so far as I have the papers here seems to be confined to the question of damages. It don't make a particle of difference as to whether they got credit for the benefits, assuming that she was assessed for the paving the same as others. It is understood that this appeal is confined to damages simply. Then we think the question is the difference in market value before and after the improvement. That I understand to be the rule in cases of this sort. Q. Mr. Dawson, have you made any estimate of your damage there? A. Yes, sir. Q. By changing the grade of that street? Objected to by counsel for defendant on the ground that it is not a proper question to ask. The proper question is, what is the difference in the market value of this property before and after the improvements; not as to a particular estimate of what the damage is. By the Court: We will allow the plaintiff to show the amount of damage shown by the difference in the market value of the property before and after the improvements. Q. Go on and state, Mr. Dawson. A. I made an estimate of what it would cost to raise the house"— Objected to. Objection sustained and bill sealed. [7]

Mathew Mawhinney, a witness for plaintiff, was asked: " Q. Mr. Mawhinney, where do you live? A. I live in Bellefield, on Dithridge street. Q. Are you acquainted with the property of Mrs. Dawson? A. I have seen the property. Q. Were you acquainted with it before the improvements were made? A. I saw it before the improvements were made. Q. Do you know about what the market value of the property was on that street? A. No, sir; I don't. Q. Do you know what the people generally held their property at? A. No, sir. Q. Didn't know that? A. No, sir; didn't know that. [Q. Do you know whether this property was injured by the change in the grade on that street?" Objected to as incompetent and irrelevant. Objection sustained, and bill sealed.] [6]

When D. H. Bochman, a witness for defendant, was on the stand he was asked : " Q. Prior to the improvement of Westminster street, grading, paving and curbing, in 1891, were you fairly familiar with the values of property in that neighborhood? A. I can't say I was familiar with the values of it ; no, sir. Q. Did you have sufficient knowledge of the values of properties along there to express an opinion of the values along there ? A. Yes, sir. Q. Prior to the improvement? A. Yes, sir. Q. Prior to the improvement what would you say was the value of the Dawson property prior to the improvement per foot front? Objected to by counsel for plaintiff for the reason that the witness has said he was not familiar with values. By the Court: The question is whether you have, from your knowledge of the value of property in the vicinity, had sufficient acquaintance with the market value of property to be able to express an opinion as to the market value of this particular property ? A. I think so." Objection overruled, and bill sealed. [11]

The witness then stated his estimate by the acre.

Plaintiff offered in evidence in contradiction and rebuttal of the testimony of Joseph R. Woodwell, who testified for defendant in effect that the value of the property was enhanced several thousand dollars by the improvement, that portion of the viewers' report signed by himself and the other viewers, in which they find the damages to the property of Susannah Dawson to be $720. Objected to. Objection sustained, and bill sealed. [2]

The court charged in part as follows :

" [The Supreme Court has laid down the rule by which this damage is to be determined, and it is this : You are to take the market value of the property immediately prior to the improvement and unaffected by the improvement, and compare that with the market value immediately after the improvement as affected by that improvement, and, if it has been lowered by the improvement, then the party is damaged, and his damage is the amount of the difference. If the difference is the other way ; if the value has been increased, then there is no damage. In that case, you simply find for the defendant.] [8]

" [This is a simple rule which is perhaps slightly complicated in this case by another matter which is contained in this report: It is conceded that in this report this plaintiff, Mrs. Dawson, is

assessed with the sum of $1,479.74, as benefits.  The counsel for plaintiff concedes here that this part of the report is not appealed from.  That as a result the plaintiff will be compelled to pay the sum of $1,479.74 for benefits.  So that, if the market value was not enhanced as much as $1,479.74, then the plaintiff should have damages; and she should have as much damages as the enhancement is less than that amount.] [10]

" For instance, if you find that the property was only enhanced a thousand dollars, she having to pay $1,479.74, her damage would be $479.74.  The simplest way would be for you to add this $1,479.74 to the market value of the property as you find it immediately before the improvement and as unaffected by it, and then compare that with the market value of the property as you find it afterwards.  If you find that notwithstanding that the market value is as great after as before with this addition, then this lady has suffered no damage.  If you find with this examination that the value of the property has increased, then you find that she has suffered no damage.  But you can certify no damage in favor of the city.  If you find it is less, then you take this difference.

" [It is not a question of how much it would take to raise this property to the level of the street or to raise the improvements upon it to that level.  There are many cases in which the property is entirely destroyed for the purposes for which it was used at the time the improvement was made, but in the general market it is increased.  In that case the law allows no damage.  And so here, even if it is destroyed and the improvement of the property increased the value of the land to such an extent as to raise the market value, there would be no damages.] " [9]

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* were (1-7, 11, 12), rulings on evidence; (8-10) instructions; quoting bills of exception and evidence and instructions.

*M. A. Woodward*, for appellant.—Under the act of 1891, damages should be assessed separately from benefits, e. g., if a street is opened over land of A and along land of B and the land taken is worth $3,000, and the land of A and B each in-

creased in value $3,000, damages should be assessed to A to the amount of $3,000, and an assessment of $1,500 benefits on A, and the same amount to B to pay those damages should be assessed.   Under the old law (acts of Jan. 6, 1861, § 3, P. L. 1131; May 16, 1889, § 17, P. L. 232), B would have to stand the loss of his $3,000 of property because of his $3,000 of benefit; he would recover nothing because he lost nothing.   The same illustration holds to grading and paving as to the case in hand.

*William C. Moreland, Thomas D. Carnahan* with him, for appellee, cited: Chambers v. South Chester Borough, 140 Pa. 310.

OPINION BY MR. JUSTICE MITCHELL, December 30, 1893:

The main contention of appellants that the act of May 16, 1891, P. L. 71, introduced a new rule for the estimation and measure of damages in the opening or change of grade of streets, cannot be sustained.   Before that act the practice was for viewers to report the result of their findings on the two matters of damages and benefits, as a single sum, either damages or benefit, but not both.   Under the act of 1891 they report both matters separately, but the net result is the same.   The only effect of the change is to give the court primarily and the parties finally more information as to the steps by which the result was reached, and better opportunity to have it examined and reviewed.

How much of the cost of a local change which is also a general improvement, should be justly charged to those in the immediate vicinity, and how much to the public at large, and what shall be the legal definition and limits of such vicinity are questions of great practical difficulty.   If all cases were as clear and uncomplicated as the examples put by appellant's counsel, the rule contended for by him, as the intention of the act of 1891, would be a just and desirable one, but in practice the difficulties are numerous and the danger of injustice and abuse great.   Viewers, as all experience shows, have a strong tendency to find benefits sufficient to cover the whole cost of the improvement, and if, in the search for properties enough for that purpose, they may first find the cost and damages and then take up the assessment of benefits as a separate and distinct

matter, it is safe to prophesy that such properties will always be found. An extension of the doctrine of special local benefits, of such doubtful constitutionality and not at all doubtful inexpediency, will not be lightly assumed. The settled law was that each property owner concerned was entitled to have his case as a whole, both as to damages and benefits, separately and specially considered, and that, in such consideration, the general increase in value from the development of the neighborhood, was not such a local and special advantage to him as to be taken into account as part of the benefit to be assessed upon him. We fail to find any intent in the act of 1891 to change these rules.

In the present case the finding of the viewers as to benefits was not appealed from. Whether such an appeal, from part only of the award, is authorized by the statute we express no opinion about. Being accepted by both parties, that element of the case was conclusively settled. Whether the viewers' report was distinctly put in evidence or not, it seems to have been referred to by both parties, as part of the case, and the learned judge was therefore quite justified in calling the jury's attention to the assessment of fourteen hundred dollars on plaintiff, for benefits, and telling them that unless the market value of her property was enhanced to that amount she should have damages. But even if it had been technically error, the appellant could not justly complain of it. The greater the value of her property before the new grade, the greater her damages necessarily were, and the judge directed the jury to add these fourteen hundred dollars of assessed benefits to the market value before the improvement, and then compare it with the market value afterwards. This was manifestly favorable to the plaintiff.

We are however obliged to hold that the learned judge drew the line too strictly upon the appellant's witnesses as to their testimony on the injury to the property. It is true that the measure of damages is the difference between market value before and after the improvement. That is the test by which the jury must be governed, and to which each witness must be brought as a final result of his testimony. But he cannot be confined to a bald answer to that one question. If he could the jury would have to arrive at a verdict by a mere count of

numbers and amounts.   The value of an expert's opinion may be fortified on the one hand or reduced on the other by an examination as to his general experience, his means of knowledge in the particular case, and the facts and reasons on which he bases his conclusion.   It is matter of opinion at best, and the lowest grade of evidence that ever comes into a court of justice.   It is permissible only because, bad as it is, there is nothing better attainable.   Opinions of this as of other kinds are apt to differ, and their value is not always in proportion to the confidence with which they are advanced.   It is proper therefore that the jury should have all the aids possible in enabling them to judge of the weight to which any particular opinion is entitled.   To assist them to a right conclusion matters are often admissible which are not in themselves separate and independent grounds of damage.   Thus in Railway Co. v. McCloskey, 110 Pa. 436, it was said by our late brother CLARK that " The cost of fencing cannot be recovered as a distinct item of damages, but the question how much the burden of fencing will detract from the value of the land, may be considered by the jury."   And in Harris v. R. R. Co., 141 Pa. 242, it was said, " in estimating the value of the lot before the taking, its possible and probable uses are important elements, and may be shown by the opinions of experts.   But the details of improvements, the cost, probable rent afterwards, etc., require knowledge of the subject to insure the proper weight to be given, and the inferences to be drawn from them.   (And it might have been added as it was in Ry. Co. v. McCloskey, that they are speculative in character.)   Hence they are not admissible as independent facts for the jury. . . . But such details ought to enter into the view of the expert in forming his judgment, and whether they have done so is a legitimate subject of cross-examination," or of examination in chief.

The case of Chambers v. So. Chester, 140 Pa. 510, is not at all in conflict with these views.   In that case, which was closely analogous in its facts to this, the plaintiff offered to prove the cost of filling up the lot to a level with the street at its new grade, but the offer was excluded by the court " because it does not appear that it was a level lot formerly," and further the court said, " you may show that the house had to be raised, but I don't think the cost will be evidence," i. e. of a separate

item of damage. That this was the meaning of the court is clear from the charge further on where it is said, " you may consider these several matters as elements in the cause but you are not to award damages for the building of walls or the filling up of lots as special damages. You are not to take up these separate items and award separate damages for them, and add them together, and say that is the damage suffered. The law has given another rule," etc. This was quoted and approved in the opinion of this court.

In the present case the learned judge applied the rule that limits the jury to the estimate of the difference in market value, so stringently to the witnesses that some at least of them were prevented from testifying on matters that were relevant and material to the main issue. No doubt these rulings were largely induced by the persistency of counsel in trying the case on the theory that the act of 1891 had introduced a new rule, and by the difficulty of getting witnesses under his examination to conform to the true rule as laid down by the court. But however produced, they deprived the plaintiff of some evidence that she was entitled to put before the jury. Thus the facts that the new grade left the plaintiff's house in a depression, that one of the ways in which that disadvantage could be remedied would be by raising the house and filling in the ground, and that that process would not only be expensive but would also entail the loss of valuable trees and shrubbery, all these matters and in a general way the cost of them, were competent evidence, not indeed as in themselves items of damage, for as the learned judge justly said there are cases where property is entirely destroyed for its former use and yet its market value is increased, but as elements bearing on the difference of such market value. Moreover testimony as to injury to the property was competent, though the witness, as in the case of Mawhinney, sixth assignment of error, could not state the figures at which property in that neighborhood was held. A man may know the effect on the relative value without being able to fix the actual market price. Such evidence is admissible at least in corroboration of others who may give definite figures.

It was also error to exclude the report of the viewers in contradiction of Woodwell. It showed that he as a viewer had signed a report making an entirely different estimate of the

effect of the improvement on plaintiff's land, from that to which he had testified at the trial. It was competent for the plaintiff to show this, and to have the benefit of it in reduction of the weight of Woodwell's opinion with the jury, even though in so doing he might introduce evidence not admissible for other purposes.

Judgment reversed and venire de novo awarded.