Thos. R. Patton, Appellant, *v.* The City of Philadelphia.

*Road law—Streets—Eminent domain—Damages—Municipalities—Evidence.*

Where land is taken by a municipality for a street evidence is admissible by the owner to show of what uses his property was capable, and how such uses have been interfered with, not as independent items of claim, but as necessary elements in determining the relative value of the whole tract and the remainder after the taking.

Where a street is opened at a grade that leaves the adjoining property in a depression, the expense of putting the property in condition to make use of the street is one of the elements of damages, and it is proper to treat it as a part of the case for damages for the taking.

In such a case offers of evidence as to the amount and cost of filling required to make the lot conform or be available for use at the new grade are competent, and should be admitted, not as independent items of damage, but as elements to be taken into consideration by the jury, together with the other circumstances, in determining the market value of the property before and after the taking of part of it for the street.

Argued Jan. 21, 1896. Appeal, No. 120, July T., 1895, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1894, No. 1613, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal by the city of Philadelphia from an award of a road jury in favor of Thomas R. Patton. Before GORDON, J.

At the trial it appeared that plaintiff owned property at Tioga and Emerald streets in the city of Philadelphia. Prior to Mr. Patton's purchase of the property a paper grade had been established by the city which nearly conformed to the land surface. In 1887, another grade regulation was adopted by the city at a much higher elevation, and in 1893 the city entered a bond and took the land, a strip thirty feet wide and seven hundred and fifty-one feet two and one half inches long, in the bed of Tioga street, for street purposes, and physically changed the grade to conform to the plan regulation of 1887.

John H. Dye, a witness for plaintiff, testified as follows:

Q. Does this plan show the natural contour of the ground in question? A. Yes, sir. Q. Does it show the present confirmed

grade? A. Yes, sir. Q. About what is the difference between, or have you made a calculation of the amount of filling required from the natural surface to the present confirmed grade? A. Yes, sir. Q. How many cubic yards will it take to fill it up?

Objected to. Objection sustained. Exception for plaintiff. [1]

Q. Having made a survey upon the ground itself and having compared it with the city plans, are you able to state the number of cubic yards of filling between the natural surface and the established grade? A. Yes, sir. Q. Now, do not answer until objected to, but state the number of cubic yards of filling required between the natural surface of Mr. Patton's ground and the grade as established by the city in the opening of the street?

Objected to. Objection sustained. Exception for plaintiff. [2]

Wm. H. Quigg, a witness for plaintiff, testified as follows:

Q. What is your business? A. Contractor and builder. Q. Are you familiar with the cost of hauling dirt? A. Yes, sir. Q. Do you know where the Patton property is? A. Yes, sir. Q. Do you operate in that section of the city? A. I have done a lot of digging in that section. Q. What will it cost, or what would it have cost in 1893, to fill up Mr. Patton's ground per cubic yard?

Objected to. Objection sustained. Exception for plaintiff.

Q. Do you know what it would cost at that time? A. Yes, sir, I can tell what it would cost at that time if you will let me. Q. Having stated that you know what it would cost at the time of opening the street, I ask you again what it would be.

Objected to. Objection sustained. Exception for plaintiff. [3]

Henry J. Close, a witness for plaintiff, testified as follows:

Q. Can you tell what it would cost to fill up Mr. Patton's ground at the time of the opening of the street in 1893? A. Yes, sir, I can. Q. Tell us what it would cost to fill up the ground per cubic yard.

Objected to. Objection sustained. Exception for plaintiff. [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions.

*Robert Alexander*, of *Alexander & Magill*, for appellant.— As the physical taking of the land and the physical establishment of the grade occurred at the same time, it was proper for the court below to present both claims to the jury at one time: Jones v. Borough of Bangor, 144 Pa. 638; Righter v. Phila., 161 Pa. 73; Act of May 26, 1891, P. L. 117; Dawson v. Pittsburg, 159 Pa. 317; Reyenthaler v. Phila., 160 Pa. 195; Larkin v. Scranton City, 162 Pa. 289.

*E. Spencer Miller*, assistant city solicitor, and *John L. Kinsey*, city solicitor, for appellee, cited, Dawson v. Pittsburg, 159 Pa. 317.

OPINION BY MR. JUSTICE MITCHELL, April 13, 1896:

The learned judge at the trial gave the jury the correct rule for the estimation of damages, the difference between the value of the property before the taking and the value of what was left afterwards. But the evidence, especially on the latter point, was conflicting, the plaintiff's witnesses testifying that the value was diminished and the city's witnesses that it was increased. The jury had therefore to decide this question and they should have had all the information obtainable to enable them to form a correct judgment. Plaintiff claimed for land taken and prima facie was entitled to compensation from that fact alone. But the city argued, true we have taken part of your land, but we have given you a street where you had no outlet before, and the land you have left is therefore worth more than the whole tract was before. To this the owner rejoined, so far as my land is concerned your street is up in the air, and it will cost me more to make use of it than the value of such use when made. This was the dispute the jury had to pass upon, and the value of the street to the remaining lot and the cost of making it available, were necessary elements in reaching a decision. It was proper that they should have accurate information on the question of such cost, rather than to be allowed to

guess at it as they must otherwise do.   It is always competent for the owner to show what uses his property was capable of and how such uses have been interfered with, just as on the other hand the city may show what new uses or advantages have been opened to the remainder by the city's action in taking a part.   Evidence on these points is admissible, not as independent items of claim or counter-advantage, but as necessary elements in determining the relative values of the whole tract and of the remainder after the taking.   As these elements have necessarily to be considered by the jury it is proper they should have the assistance of exact information to guide them.

Where a street is opened at a grade that leaves the adjoining property in a depression, the expense of putting the property in condition to make use of the street was held in Dawson v. Pittsburg, 159 Pa. 317, to be one of the elements of damage ; and it was proper to treat it as a part of the case for damages for the taking : Righter v. Philadelphia, 161 Pa. 73.

The offers of evidence therefore, as to the amount and cost of filling required to make the lot conform or be available for use at the new grade were competent and should have been admitted, not as independent items of damage, but as elements, to be taken into consideration by the jury together with the other circumstances, in determining the market value of the property before and after taking of part of it for the street.

Judgment reversed and venire de novo awarded.