Pittsburgh Terminal Warehouse & Transfer
Company, Appellant, *v.* Pittsburgh.

Argued March 30, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William H. Eckert,* with him *Allen T. C. Gordon* and *Smith, Buchanan & Ingersoll,* for appellant.

*Anne X. Alpern,* First Assistant City Solicitor, with her *Churchill Mehard,* City Solicitor, and *Loran L. Lewis,* Assistant City Solicitor, for appellee.

OPINION BY MR. JUSTICE STERN, April 18, 1938:

In this eminent domain proceeding the questions on appeal relate solely to rulings on evidence. Part of plaintiff's land, a vacant lot, was appropriated for a municipal street improvement, including the construction

of a ramp, and it was claimed that the rest of the property was depreciated in value.

Mr. Chubb, one of plaintiff's real estate experts, testified to a difference in market value before and after the execution of the work of $147,223. In cross-examination, being asked how he estimated that amount of damage, he allocated part of it to the value of the land actually taken, part to the value of other land that would have to be used to afford a new access to the property, and the balance to an alleged diminution in value of the remaining land of sixty-five cents per square foot. He was asked on re-direct examination: "How do you arrive at this sixty-five cents a square foot depreciation on the remaining property . . . ?" The question was objected to "as repetition." The objection was sustained, and this ruling constitutes the first of plaintiff's present grievances.

In direct examination Mr. Chubb had testified to the factors which, in his opinion, gave the property special value before the making of the street improvement, such as its large area, its unique adaptability for certain commercial purposes, and its abutment on the street as it originally existed; he also had testified to the conditions which he thought diminished the value as the result of the work performed by the city, such as the deprivation of convenient approach to the property for vehicular traffic, the necessity of providing a new street to restore such access, the cutting off of light and air and the impairment of the view by the construction of the ramp, the separation of the property from its previous contact with a railroad, and an undesirable change effected in its shape. Defendant was therefore justified in claiming, and the court in ruling, that the elements considered by the witness in arriving at his estimate of damage had been fully covered by him in direct examination. Plaintiff's counsel now states that what he desired to elicit from Mr. Chubb was the mathematical calculation by which he had arrived at the figure of

sixty-five cents per square foot as the diminution in value; he claims, for example, that the witness had estimated the loss of prospective rental value resulting from the interference of the ramp with the light and air of a building that might be erected on the lot, and had capitalized this loss, and this, with other figured items, would have explained the amount of depreciation to which the witness testified. To support his contention as to the admissibility of such evidence plaintiff relies upon the Act of April 21, 1915, P. L. 159, which provides that in eminent domain proceedings witnesses may "state in detail, and costs, all the elements of benefit or damage which they have taken into consideration in arriving at their opinion." As far as "costs" are concerned, there is no doubt—and it always has been held—that actual outlays and estimates of necessary construction work may be given in evidence, not as independent and distinct items of damage, but as elements bearing on the difference between values before and after the exercise of the right of eminent domain: *Dawson v. Pittsburgh,* 159 Pa. 317; *Patton v. Philadelphia,* 175 Pa. 88; *Parry v. Cambria & Indiana R. R. Co.,* 247 Pa. 169; *Westinghouse Air Brake Co. v. Pittsburgh,* 316 Pa. 372; *Hahn v. City of Bethlehem,* 322 Pa. 129; *Puloka v. Commonwealth,* 323 Pa. 36. But as to "elements of benefit or damage" which are not susceptible of accurate mathematical determination, the rule must necessarily be otherwise, and, while the act gives the right "to state in detail" such elements, it manifestly was not intended thereby to permit their itemized reduction to dollars and cents, and thus to give a greater measure of plausibility to the estimate of total damage by making it appear to have been scientifically determined by the arithmetical addition of a number of specific items of damage, each of which in itself is necessarily only an expression of opinion and not factual evidence. While the make-up of a witness's appraisal of the damage may be probed on cross-examination, as approved, for example,

in *Regina v. Monroe County,* 319 Pa. 257, and while such cross-examination may justify a wider re-direct examination than would have been permissible in chief *(McSorley v. Avalon Borough School District,* 291 Pa. 252, 256), there was no cross-examination in the present case as to the calculation of sixty-five cents per square foot, and no basis, therefore, for re-direct examination upon that subject. It may be added that plaintiff's proposed evidence as to the extent of the likely loss in rental value due to diminution of light and air was, in any event, inadmissible as being purely speculative: *Greenfield v. Philadelphia,* 282 Pa. 344, 354, 355. As far as the cost of construction items was concerned, Mr. Chubb was not qualified to testify on that subject because he was not an engineer or contractor but a real estate expert.

Mr. Abernethy, another of plaintiff's witnesses, was asked in re-direct examination: "Well, can you give us in dollars and cents the damage resulting from some of these reasons why, as you testified before, your property was damaged by the construction of this Horace Street ramp?" For the reasons already discussed the court properly sustained an objection to this question.

A real estate expert for defendant, Mr. Trohaugh, during the preliminary cross-examination as to his competency, was asked by counsel for plaintiff as to the price paid in the sale of a neighboring property. An objection was made and sustained. As the learned trial judge stated, if this question was permissible at all it would have been so only on ultimate cross-examination and not on the initial examination into the competency of the witness: *Leaf v. Pennsylvania Co.,* 268 Pa. 579, 581. Subsequently the same witness was cross-examined as to the sale prices of other properties, none of which, however, had been considered by him in fixing his valuation of plaintiff's property. A party may not bring out, on cross-examination, evidence of such prices, unless the witness has previously testified that his opinion

was based upon his knowledge thereof; only when he has so testified may he be cross-examined as to the prices of such other properties for the purpose of testing his good faith and credibility: *Girard Trust Co., Trustee, v. Philadelphia*, 248 Pa. 179; *Llewellyn v. Sunnyside Coal Co.*, 255 Pa. 291; *Pennsylvania Co. for Insurances on Lives, etc., v. Philadelphia*, 268 Pa. 559; *Wissinger v. Valley Smokeless Coal Co.*, 271 Pa. 566; *Serals v. West Chester Borough School District*, 292 Pa. 134. The learned trial judge said, at one stage of the trial, that he would sustain an objection "to any testimony as to any selling prices on cross-examination." It is to be presumed he had in mind the distinction pointed out in these decisions and was referring only to cross-examination regarding the sale prices of properties not stated by the witnesses to have been relied upon by them in forming their valuations. Whether this be so or not, plaintiff's counsel apparently did not attempt to cross-examine defendant's witnesses as to the selling prices of properties which they *had* relied upon, and in the absence of such an actual attempt, followed by a refusal by the court to permit it, there is nothing to indicate that plaintiff really desired to ask such questions and was prevented therefrom and thus harmed by this general statement of the court.

Defendant's witness, Mr. Trohaugh, having testified that in forming his opinion he had taken into consideration the sale, among many others, of a property by Wilson-Snyder Manufacturing Company to Fort Pitt Investment Company, plaintiff subsequently was not permitted by the court to present evidence that this sale was not for consideration but a conveyance for their own convenience between two corporations having the same stockholders. Ordinarily such rebuttal testimony would be admissible: *Henkel v. Wabash Pittsburgh Terminal R. R. Co.*, 213 Pa. 485; *Fisher v. Allegheny County*, 324 Pa. 471, 476. Here, however, the price upon which Mr. Trohaugh relied was not mentioned in

the evidence, so that it is impossible to say, even if the question should have been permitted, that its exclusion was of sufficient practical import to warrant the reversal of a case so fully and even laboriously tried as this, and so comprehensively presented to the jury. Moreover, plaintiff's witness called in rebuttal was not shown to have had any personal knowledge concerning the conveyance of the property but possibly merely hearsay information which might have been no more reliable than that of Mr. Trohaugh and would not have been competent to establish the fact as to the actual consideration which passed in the transaction.

Judgment affirmed.