### UNITED STATES v. 875 ACRES OF LAND, MORE OR LESS, ETC., et al.

#### Civ. A. No. 846.

District Court, M. D. Pennsylvania.

Feb. 21, 1945.

Edwin D. Strite, of Chambersburg, Pa., and Robert McK. Glass, of Sunbury, Pa., for claimant.

Frederick V. Follmer, U. S. Atty., of Scranton, Pa., and George A. Shutack, of Nesquehoming, Pa., for Government.

JOHNSON, District Judge.

This is a motion for a new trial presented by the United States of America after trial of a feigned issue framed to determine the amount of damages to be awarded to John H. Kinter and Gertrude B. Kinter, his wife, hereinafter called the plaintiffs, for the taking of a tract of land in Greene Township, Franklin County, Pennsylvania, condemned for the use of the Letterkenny Ordnance Depot of the United States Army.

The United States of America presented its petition in this Court on February 7, 1942 for the condemnation of the premises involved in these proceedings. In the Declaration of Taking filed the Government allocated the sum of $25,000 as compensation for the tract. That sum was deposited in the Registry Fund of this Court and on October 20, 1942, a part of that sum amounting to $23,000 was paid to the plaintiffs. On June 22, 1943, the viewers filed their report which awarded the plaintiffs $26,200. The Government appealed to this Court from the award of the viewers. A Jury trial was demanded and resulted in a verdict for the plaintiffs on November 18, 1943 in the amount of $34,533, plus interest to be computed by the court and counsel. The motion for a new trial followed and is now before this Court for disposition.

The reasons assigned by counsel for the government in support of the motion for a new trial are as follows:

"1. The verdict was against the evidence.

"2. The verdict was against the weight of the evidence.

"3. The verdict was against the law.

"4. The verdict was excessive.

"5. The Court erred in receiving evidence of the cost of the improvements made by the owner on the land prior to condemnation since such costs were not equivalent to market value.

"6. The Court erred in instructing the jury that such costs of improvements may be considered and given certain weight since such items of cost were wholly incompetent.

"7. The Court erred in charging the jury as follows: 'Cost of repairs and improvements was received by the Court as some evidence bearing upon the fair market value of the farm property at the time of taking.'

"8. The Court erred in instructing the jury that the cost of repairs and improvements are proper 'to consider along with other evidence in determining the fair market value at the time of taking.'

"9. The Court erred in ruling that the owner's witness, J. S. Rahauser, who was not a resident in the neighborhood where the property was located, and who obtained knowledge of some sales by reference to the records in the Recorder of Deeds office, was qualified to give an opinion as to the value of the land, and in permitting him to testify as to its value.

"10. The Court erred in ruling that the owner's witness, M. E. Bobb, who was not a resident of the neighborhood in which the property involved is located and who did not know of sales in the immediate neighborhood, was qualified to testify on the valuation of the land, and in permitting him to give his opinion on its value."

The questions involved are whether a witness who knew the farm taken, who lived five miles therefrom, owned land in the neighborhood and knew the prices of farm sales in that neighborhood is qualified to give an opinion as to the market value of that land; whether it is proper to admit in evidence cost of repairs and improvements made by the owner during the time he was in possession prior to the condemnation and whether or not the verdict was excessive.

The first four reasons assigned may be considered together. The following witnesses for the plaintiffs qualified and testified to the fair market value of the prem-

ises taken by the government as follows: J. S. Rahauser testified that the fair market value was $35,000; Frank B. Leidig testified that the fair market value was $35,000; Walter O. Elliott testified that the fair market value was between $35,000 and $40,000; George W. Fries testified that the fair market value was $36,500; Samuel D. Lehman testified that the fair market value was between $35,000 and $40,000; M. E. Bobb testified that the fair market value was between $50,000 and $55,000; Luther Miller testified that the fair market value was $35,000.

The witnesses for the government qualified and testified as follows: Jeremiah Ausherman testified that the fair market value was $20,000; W. H. Gluck testified that the fair market value was $18,000; James M. Heckman testified that the fair market value was $15,000; Charles S. Andrews testified that the fair market value was $15,000; Charles D. Minehart testified that the fair market value was $17,000.

The testimony on the fair market value was accompanied by testimony describing the land and the improvements located thereon. From that source the jury learned that the premises consisted of 114 acres and 92.6 perches of land improved with a manor house about 200 years old which was constructed of stone and brick and contained 10 or 12 rooms. The plaintiffs had made extensive improvements to the manor house and had built a large hog pen, a large garage and implement shed, a log cabin, chicken house, a wash house, manure shed, pheasant coop, partridge house and duck pond. The barn was improved and at the time of taking it contained 23 stanchions, three maternity stalls, two bull pens and a bull yard, four box stalls and two head stalls for horses. An electric transmission line was installed and spring water piped where necessary. One hundred and fifteen acres were in a high state of cultivation, located in Greene Township, in the limestone belt, Franklin County, in the neighborhood of Chambersburg.

The jury was in possession of sufficient information to decide the question of value thus presented for determination. There is no merit in the first four reasons, and they must be dismissed.

The fifth, sixth, seventh and eighth reasons assigned by the government pertain to the cost of improvements and may be considered together.

The Pennsylvania Act of April 21, 1915, P.L. 159, § 1, 26 P.S. § 101, provides as follows:

"In all proceedings arising from the exercise of the right of eminent domain it shall be competent for all witnesses called, when duly qualified, to state their opinion as to the market value of the property before the exercise of the right of eminent domain and as unaffected by it, and its market value immediately after the exercise of the right of eminent domain and as affected thereby:—

"(a) To state in detail, and costs, all the elements of benefit or damage which they have taken into consideration in arriving at their opinion;

"(b) In arriving at their opinion as to the market value immediately after the exercise of the right of eminent domain, to add to their opinion of the market value before such exercise the cost or value of all the elements of benefit or advantage, and to deduct therefrom all disadvantages or damage, in order to arrive at the market value after such exercise of the right of eminent domain and as affected thereby;

"(c) In all proceedings to assess damages or benefits for the opening of any street, alley, or other highway, to take into consideration as one of the elements of advantage or disadvantage the cost of street improvements."

Where evidence as to costs was admitted it was not as distinct items of damage, but as elements bearing on the market value of the premises. In the charge to the jury the trial judge stated:

"Much evidence was offered to describe the property; the extent, its location, its description, character of the land, and the purpose to which it was put, agricultural purposes, the buildings, the house, the barn, the other buildings, repairs, costs of repairs and improvements, and all of this to assist you in determining, from the evidence, the fair market value of the property at the time of the taking. That is the question, from all the evidence that you must determine in arriving at your verdict for the plaintiffs in this case.

"You went down to the farm, and you inspected the farm. You did this, that from your own knowledge you might have

a clear view of the property in question, so that the evidence that would be offered here in court would be more intelligible to you, that you might understand it and might be able to tell and apply all of that evidence to this question: What was the fair market value of the entire property taken, with its improvements, at the time of taking.

"For example, the plaintiffs here show the extent of the repairs, the costs of repairs. Now, it is not the question you are to determine, what was the cost of repairs, the question is: What was the fair market value, and the costs of the repairs and improvements was received by the Court as some evidence, not independent, but some evidence bearing upon the question of the fair market value of the property at the time of the taking.

"To illustrate—the cost of the repairs might be larger than the value of the property. You can see that you would not award a verdict for the costs of the repairs and improvements, but you would render a verdict for what the evidence showed was the fair market value at the time of the taking. But the costs of repairs and improvements, together with all of the evidence, and the description of the property, the community in which the property is situated, all these questions are proper for you to consider, along with all other evidence, in determining the fair market value of the property at the time of the taking."

The evidence bearing on the cost of improvements was adequately and properly explained. Introduction of evidence of costs, authorized under the act of 1915, supra, has been allowed by the courts of Pennsylvania. Pittsburgh Terminal Warehouse & Transfer Co. v. Pittsburgh, 330 Pa. 72, 75, 198 A. 632. In that case, Mr. Justice Stern, delivering the opinion of the court, stated: "As far as 'costs' are concerned, there is no doubt—and it always has been held—that actual outlays and estimates of necessary construction work may be given in evidence, not as independent and distinct items of damage, but as elements bearing on the difference between values before and after the exercise of the right of eminent domain. Dawson v. Pittsburgh, 159 Pa. 317, 28 A. 171; Patton v. Philadelphia, 175 Pa. 88, 34 A. 344; Parry v. Cambria & Indiana R. Co., 247 Pa. 169, 93 A. 336; Westinghouse Air Brake Co. v. Pittsburgh, 316 Pa. 372,

176 A. 13; Hahn v. City of Bethlehem, 322 Pa. 129, 185 A. 227; Puloka v. Commonwealth, 323 Pa. 36, 185 A. 801." 330 Pa. at page 75, 198 A. at page 633.

Reasons 5, 6, 7 and 8 advanced in support of the motion for a new trial must be dismissed.

The ninth and tenth reasons advanced concern the qualifications of two of plaintiffs' expert witnesses. Reason 9 alleges that J. S. Rahauser was not a resident in the neighborhood where the condemned property was located; that he obtained knowledge of some sales by reference to the records in the office of Recorder of Deeds for Franklin County and that he was not qualified to express an opinion. This contention is not supported by the record. This witness was the Recorder of Deeds for Franklin County and thus in a position to learn of sales and sales prices in that county. He had bought and sold land in Letterkenny Township, and also in Greene Township where plaintiffs' farm was located; he had knowledge of sales in Greene Township and his knowledge thereof was not confined to information received from the records in his office; for ten years up to July 1, 1939, he was the manager of the Real Estate Department of the Farmers and Merchants Trust Company in Chambersburg. He stated that he knew the values of properties in Letterkenny and Greene Townships, and was familiar with the plaintiffs' property. Reason 10 alleges that the witness Bobb was not qualified to give his opinion of the fair market value of the Kinter property. The witness testified that he had lived in Chambersburg for a period of nine years, about five miles from the Kinter farm; that he is an owner of land in the neighborhood and farms in Cumberland County; he was familiar with the Kinter farm and the improvements thereon as of the date of taking; that he knew of sales of farms in the limestone belt around Chambersburg and that farm values in the limestone belt were "pretty much alike." He knew of sales in other townships in that neighborhood where "quite a few" sales were made in the last four or five years, and that he knew the prices at which these sales were made. He testified that he was able to give an opinion of the fair market value of the Kinter property.

It was the opinion of the trial judge at the time the testimony of these two

witnesses was introduced that they were qualified to state an opinion.

The ninth and tenth reasons therefore must be dismissed.

And now, all of the reasons for a new trial are dismissed, the action for a new trial is denied, and a new trial is refused.