## McCue v. Commonwealth of Pennsylvania, Department of Highways

416

*Fred T. Cadmus, 3rd,* for plaintiff.
*David H. Wheeler,* for Commonwealth.

GAWTHROP, P. J., November 7, 1966.—The Commonwealth filed a motion for new trial after a verdict for plaintiffs in the sum of $35,500 in this highway condemnation case, in which the taking occurred on July 10, 1963, prior to the passage of the Eminent Domain Code, being the Act of June 22, 1964 (Special Session), P. L. 84, art. I, sec. 101, et seq., 26 PS §1-101 et seq. Of the five grounds assigned in support of the motion, only the first two are pressed; the remaining three were withdrawn at oral argument. After argument and consideration of the matter, the motion must be overruled.

The first ground asserted is that the trial judge erred in refusing to permit the Commonwealth's counsel to crossexamine plaintiffs' real estate expert, J. Robert Wilson, by eliciting specific money damage figures for various individual items of damage and cumulating them into his total damage figure reflected in his

after-taking valuation of the premises, and in instructing the Commonwealth's expert witness, A. M. Wasson, on direct examination, not to put "price tags" on his various items of damage, but merely to indicate the nature of the items considered. For two reasons, there is no merit in these contentions.

The evidence provisions of article VII of the Eminent Domain Code are applicable to this case, although the condemnation occurred before the adoption of the code, supra: Pane v. Department of Highways, 422 Pa. 489. Section 705 (1) of the code provides:

"Evidence Generally.—Whether at the hearing before the viewers, or at the trial in court on appeal:

"(1) A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion, whether or not he has personal knowledge thereof, and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal".

The Commonwealth asserts that under those provisions, and contrary to prior case law, it may now elicit the information sought on direct and crossexamination. We cannot adopt that view.

The matters arose, respectively, as appears by reference to pages 58-59 and pages 72-73 of the record. At the unreported side bar conference had in the first instance, the trial judge stated to both counsel that the decisional law permitted, and counsel had the right of, crossexamination as to the nature and extent of all the elements or items of damage involved in the expert's damage figure, but it did not permit cumulation of dollar valuations for the various individual items on either direct or crossexamination in the circumstances here present, no question of reconstruction or rehabilitation costs being involved. Counsel for the Commonwealth took no exception to that ruling,

but merely asked Mr. Wilson again for his damage figure and then stated he had no further questions. He was limited by the trial judge in his crossexamination only as to cumulation of dollar-valued items of damage, and not as to any other matters. Thus, the record does not support the Commonwealth's position in raising the question.

In the second instance, as shown by the record, Commonwealth's counsel asked his own valuation expert on direct examination only "what factors you considered in arriving at the fair market value after the condemnation?" The trial judge then instructed the witness that he was being asked not the valuations he placed on various items of damage, but only to indicate the "elements of damage" he considered. That instruction was no more than an explanation of counsel's question. The witness enumerated, as requested, the items or elements he considered so that counsel obtained a responsive and unrestricted answer to the very question propounded. He made no offer of other proof, especially none to break down and cumulate the witness's valuation of particular items or elements of damage, and no exception was taken to the trial judge's direction to the witness. Thus, the record does not support this ground assigned. But even if it supported the grounds assigned in either or both instances, the law makes the evidence first sought to be introduced incompetent and inadmissible, and if the Commonwealth intended to, although it did not, proceed along the same lines with the witness Wasson, the same is true.

Under the ruling of our Supreme Court in Pittsburgh Terminal Warehouse & Transfer Company v. Pittsburgh, 330 Pa. 72, construing the Act of April 21, 1915, P. L. 159, 26 PS §101, the applicable rules of evidence were thus stated:

"As far as 'costs' are concerned, there is no doubt—

and it always has been held—that actual outlays and estimates of necessary construction work may be given in evidence, not as independent and distinct items of damage, but as elements bearing on the difference between values before and after the exercise of the right of eminent domain: Dawson v. Pittsburgh, 159 Pa. 317; Patton v. Philadelphia, 175 Pa. 88; Parry v. Cambria & Indiana R. R. Co., 247 Pa. 169; Westinghouse Air Brake Co. v. Pittsburgh, 316 Pa. 372; Hahn v. City of Bethlehem, 322 Pa. 129; Puloka v. Commonwealth, 323 Pa. 36. But as to 'elements of benefit or damage' which are not susceptible of accurate mathematical determination, the rule must necessarily be otherwise, and while the act gives the right 'to state in detail' such elements, *it manifestly was not intended thereby to permit their itemized reduction to dollars and cents*, and thus to give a greater measure of plausibility to the estimate of total damage by making it appear to have been scientifically determined by the arithmetical addition of a number of specific items of damage, each of which in itself is necessarily only an expression of opinion and not factual evidence". (Italics supplied.)

In Spiwack v. Allegheny County, 366 Pa. 145, counsel for plaintiff, on crossexamination of defendant's experts, sought to have the witnesses break down their figures and place a market value on a building as distinct from the lot as to both before and after value. It was held that while every pertinent question may be put on crossexamination which will enable a jury to place a fair estimate on the witness's testimony, and considerable latitude is allowed for that purpose, ". . . it is not proper under the guise of crossexamination to develop as affirmative evidence of value facts that *neither party* could have shown in chief: (citation). We have repeatedly held that the proper measure of determining the measure of damages sus-

tained in condemnation proceedings is to obtain the difference in the *market value of the tract as a whole* before the taking and afterwards as affected by it and *not by the addition of the separate values of each item* constituting the entire property: (citations). If the questions which plaintiff sought to ask of the expert witnesses on cross-examination had been allowed . . . plaintiff would have submitted to the jury by means of crossexamination a measure of damages which he could not have presented in his case in chief": Spiwack, supra, at pages 147-48. (Italics supplied.) That language was in part repeated in Peterson v. Pittsburgh Public Parking Authority, 383 Pa. 383, and the rule was followed in Baker v. Commonwealth of Pennsylvania, Department of Highways, 401 Pa. 512, holding that testimony of a witness based on something other than the *taking of the land as a whole* is incompetent.

Mott v. Commonwealth of Pennsylvania, Department of Highways, 417 Pa. 426, repeats the rule and quotes the language of Pittsburgh Terminal, supra, preserving the distinction between admissibility of cost figures in cases which involve reconstruction costs and rehabilitation of properties where improvements are destroyed and those where land only is taken, causing elements of damage which are not susceptible to accurate mathematical determination. In Mott, an equally divided court affirmed the admission in evidence of estimated costs of rehabilitation of the property "under then existing law", referring for comparison in a footnote to the provisions, not there applicable, of section 705(2)(v) of the Eminent Domain Code, covering "cost of adjustments and alterations to any remaining property made necessary or reasonably required by the condemnation". Hoffman v. Commonwealth, 422 Pa. 144, refers to the provisions of section 705(1) of the code, but does not define the "facts and data" therein mentioned.

The Commonwealth, however, asserts that, under Mott and by the terms of section 705(1) of the code, the attempted crossexamination was permissible. But the authorization under section 705(1) for the statement by a witness on direct or crossexamination of "any or all facts and data which he considered in arriving at his opinion" was not, in our view, intended by the legislature to overrule the decisions adhered to for many years and to substitute therefor the method of proof urged by the Commonwealth. The code itself so indicates. Article VI, sec. 602 thereof provides as to the measure of damages that: "Just compensation shall consist of the difference between the fair market value of the condemnee's *entire property interest* immediately before the condemnation and as unaffected thereby and the fair market value of his *property interest remaining* immediately after such condemnation and as affected thereby, and such other damages as are provided in this article". (Italics supplied). The comment thereunder states, inter alia, that the above provisions codify existing case law by adopting the "before and after" rule which is firmly entrenched in the law, citing Brown v. Commonwealth, 399 Pa. 156, in which itemization of damages was again held inadmissible, with the addition of *other items* of damages included in the code. The unit of property concept is retained by the code. "No substantive change of any kind seems intended by the use of this language. The courts have used the language in Thoburn—'the property.' (7 S. & R. 411, 422) There has been no indication in the cases that this has meant anything other than 'the condemnee's entire property interest' ": Snitzer, Pennsylvania Eminent Domain, 285 §602-2.

Furthermore, section 603 of the code, defining fair market value, provides in subsection (4) that *other factors*, as to which evidence may be offered, as provided in article VII, are included in the term. Snitzer,

supra, at §603, 289, states that it is doubtful that section 603 of the code provides for any substantive change in the definition of fair market value. The comment on subsection (4) is that it was included to encompass all matters, i.e., "facts and data", which, under section 705(1), a valuation witness relied on in arriving at his opinion. Section 705 does not encompass a different measure of damages by cumulating separate valuations of the various items or elements of damage considered. We equate the language "any or all facts and data which he considered in arriving at his opinion", appearing in section 705(1) of the code, with "all the elements of benefit or damage which they have taken into consideration in arriving at their opinion", contained in the Act of 1915, supra.

The Commonwealth's second contention is that the trial judge erred in refusing to permit introduction of evidence of sales of comparable properties by refusing to allow witnesses to state the prices of comparable sales although permitted to do so under section 705(2)(i) of the code. The record completely fails to support that assertion.

Section 705(2)(i) includes:

"The price and other terms of any sale or contract to sell the condemned property or comparable property made within a reasonable time before or after the date of condemnation".

In support of its argument, the Commonwealth points to pages 81-82 and pages 93-94 of the record. In the first instance, plaintiffs' counsel was crossexamining the Commonwealth's expert, Wasson. He asked the witness concerning marketability of plaintiffs' property after the taking:

"Q. . . . Who in the world . . . going out to buy a property, . . . would want a property that had more noise than it had before?

"A. Well, I think it is evident that the property just

east of here that was sold, was sold in 1966, I believe, at a figure of—

"Mr. Cadmus: Better not give us a figure.

"The Court: Just a moment. We are not going to get into comparative figures.

"The Witness: There are people who will pay, as evidenced by the sale".

It should first be noted that plaintiffs' counsel, not the trial judge, first cautioned the witness not to state a valuation figure. The trial judge's statement merely confirmed counsel's cautionary action on the then state of the record. Second, no evidence whatever had been produced to show that the adjoining property referred to by the witness was comparable to plaintiffs' farm. Thus, its sale price was not at that point admissible on crossexamination under section 705(2)(i) of the code as the record then stood. Commonwealth's counsel had not shown or offered to show the property referred to was comparable or what its sale price was, and plaintiffs' counsel avoided it.

In the second instance, Commonwealth's counsel, on direct examination of his own expert, R. G. deGrouchey, asked him:

"Q. Are you familiar with the values of other properties, comparable properties in this area?"

The witness said he was. He was then asked:

"Q. Will you tell us of some of the other properties which you considered in arriving at your estimate of the values?

"The Court: Just the identity of the property".

The witness then named three such properties he had considered and said he had numerous others. Commonwealth's counsel told the witness those named would be sufficient, but never undertook to show in what way those properties were comparable. More importantly, he never asked the witness the sales prices of those properties.

Again, the record fails to support the alleged error. Section 705 (2) (i) of the code authorizes a witness on either direct or crossexamination to state: "The price . . . of any sale . . . [of] comparable property . . ." Under the case law prior to the adoption of the code, whether such properties were comparable was a matter initially for determination by the trial judge: Rea v. Pittsburgh & Connellsville Railroad Company, 229 Pa. 106; Pennsylvania Co. for Insurances on Lives v. Philadelphia, 268 Pa. 559; Whitcomb v. Philadelphia, 264 Pa. 277. Snitzer, supra, 395 ff. §705 (2) (i) -2.1, states that heretofore, all jurisdictions have required the trial judge to determine initially whether the properties considered were comparable.

The record here fails to show whether or not the three properties named by the witness were in any way comparable. Two of the properties he mentioned each had an area of about 58 acres, and the third contained about 164 acres, whereas plaintiffs' farm contained over 114 acres; there was no evidence of the character of the land in any of the three properties named either as to tillable acreage, pasture land or woodland; no evidence whatever as to the buildings and improvements on any of them; and no comparison made of any of them with the farm in question. On that state of the record, there is no evidence that they were comparable to plaintiffs' premises except for the witness's bare affirmative answer to the question whether he was familiar with the values of "comparable properties" in the area. It is extremely doubtful, therefore, that sale prices of those properties would have been admissible in any event under section 705 of the code because of lack of proof that the properties were comparable. But it is unnecessary in the present circumstances to decide that question because the witness was never asked to state the sale prices of those properties. Thus, no ruling adverse to the Commonwealth on that phase of

the matter was made. Obviously, there is no merit in this contention.

And now, November 7, 1966, the motion for a new trial is dismissed and a new trial is denied.