Brown, Appellant, *v.* Commonwealth.

Argued January 6, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Alexander Knight,* with him *Foulke, Knight & Porter,* for appellants.

*Frank Edward Roda,* Assistant Attorney General, with him *John R. Rezzolla, Jr.,* Chief Counsel, and *Anne X. Alpern,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, April 18, 1960:

This is an appeal from an order of the Court of Common Pleas of Montgomery County granting the Commonwealth a new trial in an eminent domain proceeding.

Appellant owned two separate tracts of land, the first of which consisted of 33.494 acres in Upper Dublin Township; the other, 19.704 acres in Lower Gwynedd Township. Appellant purchased both tracts on March 21, 1953. Both appellant and the former owner had used the property for the growing and cultivation of trees, evergreens and shrubbery as nursery stock for sale in their nursery business.

On December 17, 1953, the Pennsylvania Department of Highways, pursuant to the Act of May 29, 1945, P. L. 1108, §8, as amended by the Act of June 10, 1947, P. L. 481, §1, 36 PS §2391.8, condemned 6.881 acres of the 33.494 acre tract of land and 1.492 acres of the 19.704 acre tract of land. On August 30, 1956, the Department of Highways condemned an area of 50 additional feet along the entire right-of-way as previously taken.

During the course of the trial, and over the Commonwealth's objections, appellant introduced itemized lists of the saleable nursery stock on the land taken, and direct testimony as to the amount of the loss suffered by the taking of the nursery stock. The lists had money totals representing the alleged value of the stock. Following the jury's verdict in the amount of $67,000, the Commonwealth filed its motion for a new trial which the lower court granted. The court ruled that the particularized evidence as to the value of the trees and nursery stock on the land taken by the Commonwealth was improperly admitted in evidence; its admission being contrary to our recognized "before and after" rule applicable in condemnation proceedings. We are not in disagreement.

It is the general rule of law in the Commonwealth that the proper measure of damage for lands taken under the power of eminent domain is the difference between the market value of the land before the exercise of the power and as unaffected by it, and its market value immediately after the appropriation and as affected by it. *Peterson v. Pittsburgh Public Parking Authority*, 383 Pa. 383, 119 A. 2d 79 (1956), and cases cited therein. Under this rule, the recovery of particular items of damage apart from any general recovery for the depreciation in market value of the whole property is unallowable. *Sgarlat Estate v. Commonwealth*, 398 Pa. 406, 158 A. 2d 541 (1960); *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 176 Atl. 13 (1934). While appellant readily admits this to be the law, he contends that we have recognized exceptions to the general rule and have allowed separate recoveries for mineral deposits or crops growing on lands taken, and argues that we should make a similar exception for nursery stock in place. But the authorities appellant advances to support creating an "exception" are cases in which the entire estate taken was the mineral deposit, *Cole v. Ellwood Power Co.*, 216 Pa. 283, 65 Atl. 678 (1907), or growing crops, *Lafferty v. Schuylkill River East Side R. R. Co.*, 124 Pa. 297, 16 Atl. 869 (1889), apart from the land and are thus inapposite. The further authority he offers is admittedly dicta, the most favorable to him being the statement in *Ribblett v. Cambria Steel Co.*, 251 Pa. 253, 96 Atl. 649 (1916), that "There may be exceptional instances, when the evidence shows the trees in question to have had a selling value separate and apart from the land (for example, trees growing on a nursery farm), where a different rule would apply. . . ."

It is not because the obiter of the court in *Ribblett* was directed toward compensation for nuisance damages rather than condemnation damages that we give

it no weight; we are not bound by any parenthetical illustration indulged in by the court in this all too inexact area. Our rule for the measure of damages in condemnation proceedings is firmly entrenched in our law. Following this rule we have refused to allow evidence of particular items of damage, including the value of coal deposits, *Searle v. Lackawanna and Bloomsburg R. R. Co.,* 33 Pa. 57 (1859), limestone deposits, *Reading & Pottsville R. Co. v. Balthaser,* 119 Pa. 472, 13 Atl. 294 (1888), standing timber, *Savings & Trust Company of Indiana v. Pennsylvania R. R. Co.,* 229 Pa. 484, 78 Atl. 1039 (1911), or, more recently, sand and gravel deposits, *Sgarlat Estate v. Commonwealth,* supra, separate and apart from the market value of the land. We see no reason for carving out a particular exception for nursery stock. We think that while in certain peculiar situations the strict application of that rule might result in a particular hardship, nevertheless, in the overwhelming number of condemnation cases, occasioned by the Commonwealth's extensive road building program, the strict application of the rule has adequately satisfied the condemnee without imposing too great a burden on the condemnor.

Nor are we impressed by appellant's argument that because "the expert on land damages would not be familiar with the value of nursery stock and the expert on nursery stock would not have knowledge of land damages" it would be "fairer and more sensible to have the land damage expert and the nursery stock expert both testify so that each could be cross-examined on the basis of their estimates." This is merely a more subtle expression of the previous argument that a different measure of damages should apply in condemnation cases involving nursery stock in place, for separate testimony concerning the two values will certainly result in the jury's itemizing the damages. Almost every piece of land taken could arguably be said

to have unique characteristics that differentiate it from every other piece of land, occasioning the need for testimony by separate experts. Were we to permit these different characteristics or uses of the land to provide the exceptions to our "before and after" rule, our rule would soon become the exception.

Order affirmed.