433 A.2d 1353

In re Condemnation by the Commonwealth of Pennsylvania, Department of Transportation of Right-of-Way, for Legislative Route 1080, Section A05, R/W, Also Known As Legislative Route 1018, Spur F-A05, a Limited Access Highway in Chester Township and the City of Chester.

TOWNSHIP OF CHESTER, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1980.

Decided July 14, 1981.

Reargument Denied Aug. 24, 1981.

Peter J. Nolan, Media, for appellant.

Martin Burman, Sp. Asst. Atty. Gen., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal, upon grant of allocatur, from an Order of the Commonwealth Court [1] reversing an Order of the Court of Common Pleas of Delaware County which had affirmed an award of a Board of Viewers in the instant Eminent Domain proceeding.

1. *Township of Chester v. Commonwealth of Pennsylvania, Department of Transportation,* 35 Pa.Cmwlth. 466, 386 A.2d 1062 (1978).

On July 31, 1973, the Commonwealth of Pennsylvania, Department of Transportation (hereinafter Commonwealth) filed a Declaration of Taking with respect to a portion of a public housing complex located in, and owned by, the Township of Chester (hereinafter Township). By virtue of the condemnation, necessary for construction of a bridge access roadway, the Commonwealth acquired 32 units in the Township's 150 unit low-income housing facility. A hearing to establish the amount of compensation due the Township was held before a Board of Viewers: witnesses for the Commonwealth appraised damages at $137,700.00, the fair market value of the property taken; witnesses for the Township appraised damages at $1,336,120.00, the cost of constructing a new building to replace the condemned structure. The latter damage amount, termed the "substitute facilities" measure, was awarded by the Board of Viewers.

The 1964 Eminent Domain Code of Pennsylvania provides:[2]

§ 1–602. Measure of damages

(a) Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

The Code specifies that, in application of the foregoing fair market value standard, cognizance may be taken of several appraisal methods, including:[3] (1) reference to sale prices of comparable properties, (2) capitalization of rental values, and (3) land value plus improvement replacement cost less depreciation. Clearly, the substitute facilities standard applied by the Board of Viewers, which allowed the cost of new facilities *without a deduction for depreciation,* was not prescribed by the Eminent Domain Code.

2. Act of June 22, 1964, P.L. 84, § 602, *as amended,* 26 P.S. § 1–602(a) (Supp.1980).

3. Act of June 22, 1964, P.L. 84, § 705, 26 P.S. § 1–705(2) (Supp.1980).

Allowance for the cost of substitute facilities, however, is not prohibited by statute and had been afforded at the *discretion* of the Commonwealth pursuant the Housing Replacement Authorization Act, which provides:

"If comparable replacement sale or rental housing is not available in the neighborhood or community in which a program or project is located and such housing cannot otherwise be made available ... the acquiring agency *may* purchase, construct, reconstruct or otherwise provide replacement housing by use of funds authorized for such program or project ..." (Emphasis added.)

Act of December 6, 1972, P.S. 1410, No. 304, § 3, 35 P.S. § 1527(a) (1977).

On only *one* occasion, the Commonwealth offered to pay for substitute facilities when a public housing project was condemned. That instance involved Kinder Park, a 54 unit public housing complex, for which replacement costs were offered in connection with condemnation negotiations. Exercise of the Commonwealth's discretion to offer such a payment for one housing complex does not, however, abrogate statutory discretion over the replacement of other housing facilities. Nevertheless, the Housing Replacement Authorization Act does not provide the Commonwealth with discretion to pay condemnees less than "just compensation." Referring to the Kinder Park instance, the Township sets forth a bare allegation that the Commonwealth's decision not to provide replacement facilities in the instant case was a racially motivated attempt to deny, under the guise of discretion, the constitutionally required level of compensation.[4, 5]

4. A review of the record discloses no basis for the assertion that the Commonwealth's utilization of the fair market value standard was racially motivated.

5. The Township does not seek review of an exercise of the Commonwealth's discretion under the Housing Replacement Authorization Act, but rather contends that the offer in respect to Kinder Park was constitutionally required, rather than discretionary. Hence, it argues the substitute facilities measure of damages to be likewise mandated for a taking of the Township's facility.

 The issue on appeal, therefore, is whether the United States and Pennsylvania Constitutions,[6] through their guarantees of "just compensation" for taken property,[7] require that the particular municipal property condemned be compensated for by replacement cost, without any deduction for depreciation or obsolescence. The fundamental principle underlying the requirement of "just compensation" is one of indemnity: a condemnee is entitled to be placed in as good a position pecuniarily as if his property had not been taken. *United States v. Reynolds*, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970); *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); *Redevelopment Authority of the City of Philadelphia v. Lieberman*, 461 Pa. 208, 336 A.2d 249 (1975). A condemnee is not entitled to *more* than is required to make him whole. *Olson v. United States*, supra. The fair market value of a property at the time of a taking is the normal gauge of "just compensation". *Almota Farmers Elevator and Warehouse Company*, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973); *United States v. Reynolds*, supra; *United States v. Miller*, supra.

 The Township urges that this Court adopt the approach followed by certain federal courts allowing the substitute facilities measure of compensation for taking of municipal property, on the ground that "just compensation" requires that functions carried out on behalf of the public be permitted to continue.[8] We are not persuaded, however, that municipalities should be treated as condemnees of special status entitled, regardless of the character of the property taken, to such compensation as would permit replace-

---

**6.** U.S.Const. amend. V; U.S.Const. amend. XIV; Pa.Const. art. 1, § 10.

**7.** Regarding the constitutional entitlement of a political subdivision to receive compensation when its property is condemned by the Commonwealth, see *City of Chester v. Commonwealth of Pennsylvania, Department of Transportation*, 495 Pa. 382, 434 A.2d 695 (1981).

**8.** See *City of Chester v. Commonwealth of Pennsylvania, Department of Transportation*, supra.

ment of condemned facilities. Municipal property is not, *a priori*, more deserving of replacement than private property. Township witnesses testified to a shortage of public housing for blacks in the condemnation area, and asserted that the Township would replace the affected units if the substitute facilities measure of damages were awarded.[9] The fact that the Township needs to replace the condemned units places it in no different position than that of a private homeowner, who, having had his home taken, would have need to secure a new residence, but would not be entitled to construct a new home at the Commonwealth's expense.

The sole Pennsylvania case advanced by the Township as a basis for the substitute facilities approach, *Pennsylvania Gas & Water Company v. Pennsylvania Turnpike Commission*, 428 Pa. 74, 236 A.2d 112 (1967),[10] is clearly distinguishable because the property therein condemned was of a *unique* character.[11] See *City of Chester v. Commonwealth of Pennsylvania, Department of Transportation*, supra. The case involved a taking of property being held by a utility as a site for a future reservoir, and, due to the non-existence of a market, in the classic sense, for reservoir property, the Court allowed replacement value as a measure of damages rather than the fair market value amount. The Court stated, however, that such compensation was a "sharp departure from the traditional measure of damages", and stressed that

9. Contrary to an assertion in the Township's brief, the Commonwealth does not contend that aid to displaced tenants relieves a condemnor of the duty to fully compensate a property owner.

10. *Pennsylvania Gas & Water Company v. Pennsylvania Turnpike Commission*, supra, did not address the issue of how damages would be decided under the 1964 Eminent Domain Code, since the condemnation antedated the Code's effective date.

11. In *Keystone Water Company, White Deer District v. Pennsylvania Public Utility Commission*, 477 Pa. 594, 385 A.2d 946 (1978), which was not a condemnation case, it was necessary to determine, for utility rate-setting purposes, whether certain property had been acquired as compensation for a taking. Therein, we noted that a replacement measure had been awarded in *Pennsylvania Gas & Water Company v. Pennsylvania Turnpike Commission, supra*, principally because there existed no market for the condemned property.

"under normal circumstances fair market value remains the only available relief." 428 Pa. at 83, 84, 236 A.2d at 117. Similarly, the Supreme Court of the United States, in *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123, 70 S.Ct. 547, 549, 94 L.Ed. 707 (1950), stated:

This Court has never attempted to prescribe a rigid rule for determining what is "just compensation" under all circumstances and in all cases. Fair market value has normally been accepted as a just standard. But *when market value has been too difficult to find*, or when its application would result in *manifest injustice* to owner or public, courts have fashioned and applied other standards. (Emphasis added; footnote omitted.)

Regardless of whether the substitute facilities measure may be required in certain limited contexts, the instant case does not present a situation where fair market value falls short of "just compensation". Market values are readily assignable to typical multifamily residences, and the Township does not allege that its housing complex is *unique* in any manner that would interfere with appraisal of fair market value.

Order of Commonwealth Court affirmed.

ROBERTS, J., filed a concurring opinion.

NIX, J., filed a dissenting opinion.

ROBERTS, Justice, concurring.

I agree with the majority that, under controlling statutes, the Township of Chester is not entitled to an amount greater than the fair market value of the housing units taken by the Commonwealth. I disagree, however, with the majority's assumption that constitutional provisions requiring "just compensation" are relevant to the standard of damages to be applied. Both U.S.Const. amend. V and Pa.Const. art. I, § 10, expressly apply to "private property." See E. Snitzer,

Pennsylvania Eminent Domain, § 201(2)–10 at pp. 58–59 (1964). As this Court observed in *Speers Borough School District v. Commonwealth of Pennsylvania,*

"[c]onstitutional prohibitions against the taking of property without compensation apply only to privately owned property: Article I, Section 10 of the Constitution of Pennsylvania. Therefore it has always been held that the Commonwealth may take property of a political subdivision or agency without payment therefor (*Chester County Institution District v. Commonwealth,* 341 Pa. 49, 57, 17 A.2d 212), the right to compensation in such cases being only a matter of grace or allowance by the Legislature."

383 Pa. 206, 208–209, 117 A.2d 702, 703 (1955). I therefore concur in the result.

NIX, Justice, dissenting.

The majority rejects the claim that the measure of compensation here is the cost of substitute facilities while embracing the position that a political subdivision is entitled to "just compensation" when its property is condemned by the Commonwealth. For the reasons set forth in my concurring and dissenting opinion in *City of Chester v. Commonwealth of Pa., Dept. of Transportation,* 495 Pa. 382, 434 A.2d 695 (1981) (filed this day), I must disagree.

In the instant case it has been demonstrated that the substitute facilities measure of damages is imperative. Township witnesses testified as to a shortage of low-income housing. The only way the Township of Chester can afford to replace the low-income units is to be awarded replacement costs. The Township has an obligation to provide low-income housing for its citizens who are unable to pay higher rents. An award of "fair market value" will not allow the rebuilding of the units taken and makes hollow the substitute facilities doctrine. The fact that the subdivision may derive the benefit of another public use as a result of the diversion does not lessen its responsibility in the area of the condemned facility.