In re CONDEMNATION BY the COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, OF RIGHT OF WAY FOR STATE ROUTE 79, SECTION W10, a Limited Access Highway, in the Township of Cecil.

Appeal of Commonwealth of Pennsylvania, Department of Transportation.

Supreme Court of Pennsylvania.

Argued Sept. 11, 2000.

Decided June 17, 2002.

safety was the most important factor for me." N.T., 3/10/98, at 264. He also testified that "[t]he only thing that prevented me [from staying with the vehicle while a search warrant was obtained] was my fear that someone would wander on that gun, if it was laying in the street." *Id.* Thus, in rendering its decision today, the lead opinion fails to address the testimony upon which the trial court relied in granting Appellants' suppression motion and upon which the Superior Court below based a significant portion of its opinion.

Walter F. Cameron, Pittsburgh, for Dept. of Transp., appellant.

W. Patrick Boyer, Washington, for Dennis Sluciak, appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

### OPINION

Justice CAPPY.*

In April of 1993, pursuant to the power of condemnation granted in the Eminent Domain Code, 26 P.S. § 1–101 *et seq.* (the "Code"), the Appellant, the Commonwealth

* This opinion was reassigned to this author.

of Pennsylvania, Department of Transportation (the "Department"), filed a declaration of partial taking for property owned by the Appellee, Dennis Sluciak. In this appeal, we are called upon to decide two questions: (1) whether Section 406(a) of the Code, 26 P.S. § 1–406(a), required Appellee to raise by preliminary objections the claim that the condemnation landlocked his remaining property and diminished its fair market value to virtually zero; and (2) whether Section 602(a) of the Code, 26 P.S. § 1–602(a), allowed the admission of evidence of the Department's later taking in February of 1997 of a neighboring piece of property, which served to insure that Appellee had legal access to his remaining property, on the issue of damages. We conclude that under the Code, Appellee was not required to file preliminary objections and that evidence of the Department's subsequent taking was not admissible in determining the just compensation to which Appellee was entitled. Thus, for all of the following reasons, we affirm the order of the Commonwealth Court.

In April 1938, Appellee's parents, Joseph and Helen Sluciak, purchased a sixty-acre parcel of land in Cecil Township. Several months later, Rudolph and Mary Dagsher purchased an adjoining parcel. Both pieces of property fronted on Grudevich Road, a township road running roughly northwest/southeast. Even though their property had frontage on Grudevich Road, the Sluciaks accessed that thoroughfare by using a driveway that crossed a sliver of land approximately twelve feet long by twenty feet wide at the corner of the Dagher's property (the "Driveway").

In the 1970s, Appellee established a landscaping business on his family's property, where he also continued to reside.

In the mid–1980s, Helen Sluciak subdivided the property, deeding one 44.624–acre portion to Appellee, and the other portion to his brother. Appellee's business, located on the portion he was given, was expanded to include excavation operations, and consisted of a repair shop, storage areas, a barn and trailers. Appellee continued traveling to and from Grudevich Road over the Driveway.

To provide a connecting ramp for State Route (Interstate) 79 and State Route 1032, the Department filed a declaration of taking on April 23, 1993, acquiring 12.190 acres of Appellee's property, including the frontage on Grudevich Road, and leaving a residue of 32.324 acres. Appellee received notice of the condemnation, and copies of the declaration of taking and property plat. He did not file preliminary objections. Valuing the property at $460,000 prior to the taking and at $315,000 after the taking, the Department paid Appellee $145,314 as estimated just compensation on May 23, 1993.

On October 12, 1993, Appellee petitioned for appointment of a board of viewers (the "Board"). At the Board's hearing, Appellee testified that before the taking, he had 800 linear feet of frontage on Grudevich Road, but that after the taking, he had none. He also testified that the Driveway, which he did not own, was his only access to Grudevich Road. Appellee argued, therefore, that the taking had "landlocked" his remaining property.[1] An appraiser called on Appellee's behalf testified that the value of Appellee's land prior

to the condemnation was $500,000, and that the value after the taking was $15,000. The appraiser's opinion was based on his understanding that Appellee's remaining property was landlocked. Asserting that he could not relocate his business, Appellee contended that the assembled economic unit doctrine applied.[2] Appellee's expert also opined that Appellee's total damages were greater than 3 million dollars.

Although the Department acknowledged that it may have been mistaken in believing that Appellee's property borders Grudevich Road in the vicinity of the Driveway, it contended that the facts showed that Appellee's remaining property was not landlocked because Appellee had access to Grudevich Road via the Driveway. The Department also offered evidence to prove that the estimated just compensation it had paid to Appellee was sufficient. On the question of damages, the Department was permitted, over Appellee's objection, to present testimony relating to the efforts it was taking to "cure" the "defect" in Appellee's access to his property. (Viewers' Report at ¶ 16, R. 45a).

The Board found that the Appellee's property does not border Grudevich Road. The Board also found that the Appellee and his predecessors in interest had always used the Driveway to travel to and from Grudevich Road, and that Appellee continued to do so. Accordingly, the Board concluded that Appellee "has an irrevocable license to the Mary Dagsher access road or an easement by necessity."

---

1. According to Black's Law Dictionary, "[l]andlocked" is "[a]n expression applied to a piece of land belonging to one person and surrounded by land belonging to other persons, so that it cannot be approached except over their land." Black's Law Dictionary 878 (6th ed.1990).

2. Under the doctrine, it is determined whether machinery, equipment and fixtures constitute part of an assembled economic unit and, are therefore, part of the condemned realty. If so, a condemnee is entitled to just compensation for their taking. *Singer v. Redevelopment Auth. of the Oil City*, 437 Pa. 55, 261 A.2d 594 (1970).

(Viewers' Report at ¶ 22.3, R. 47a). The Board also found that Appellee continued to operate his business. In light of the foregoing, the Board rejected application of the assembled economic unit doctrine, accepted the Department's appraisal of damages at $145,000, and awarded as special damages any future costs and fees "to cure the technical defect." (Viewers' Report at ¶ 22.7, R. 48a).

Appellee filed an appeal from the Board's award in the court of common pleas, alleging that the Board erred in determining what the value of his property was before and after the taking; in assessing his damages at $145,000; in finding that he had an irrevocable license or an easement by necessity over the Driveway; and in rejecting application of the assembled economic unit doctrine.

Pursuant to Section 517 of the Code, 26 P.S. § 1–517,[3] Appellee filed a motion with the trial court on February 27, 1995, asserting that access to his property was a question for the court to decide, and asking for a preliminary determination of the matter. Initially, the court denied the motion, but upon the Department's request, reconsidered, and decided to hold a hearing for purposes of determining whether Appellee's remaining property was landlocked.

In February of 1997, the Department condemned the land upon which the Driveway is constructed in order to confirm Appellee's right to use it.

On April 2 and April 14, 1997, the trial court held a hearing to determine whether Appellee's remaining property was landlocked. At the hearing, the Department made an oral motion to dismiss Appellee's appeal from the Board's determination for failure to raise that question by way of preliminary objections. The trial court denied the motion.

Before the trial court, both parties submitted proof regarding property boundaries and the Driveway's location and use. Appellee offered evidence to show that his remaining property did not front Grudevich Road. As to the Driveway, Appellee testified about the several unsuccessful attempts that he or his father had made to purchase the property with the Driveway on it from the Dagshers. He also testified that he removed snow from the Driveway in the winter and added stone and slag to it from time to time. Mrs. Dagsher's son-in-law testified that although Appellee and his family never acquired the land beneath the Driveway or an easement or a right-of-way, it was his understanding that Appellee had permission to cross the Dagshers' property. Appellee's mother testified as to her and family's continued use of the Driveway over the years.

One of the appraisers the Department had retained testified that he did not appraise the Appellee's remaining property as landlocked because of Appellee's continued use of the Driveway to and from Grudevich Road. When the Department attempted to elicit testimony from the Department's Right–of–Way Administrator about the Department's February 1997 condemnation of the Dagshers' sliver of land which included the Driveway, Appellee objected that such evidence was inadmissible. The trial court sustained the objection.

Despite its having sustained Appellee's objection as to evidence of the Department's subsequent condemnation of the Dagshers' land, in an order dated April 18,

---

**3.** Section 517 provides in pertinent part that "[a]ll objections, other than the amount of the award, raised by the appeal shall be determined by the court preliminarily." 26 P.S. § 1–517.

1997, the trial court ruled that Appellee's property "is not landlocked as the Commonwealth of Pennsylvania has cured the access issue." (Trial Court Order, R. 83a). The court went on to state that "from 1938 to the present date the Sluciak family has utilized the subject driveway for ingress and egress. In addition, the Sluciaks have been solely responsible for the maintenance, repair and snow removal from said driveway. Finally [Appellee] has transacted his business from the remaining tract of land uninter[r]upted." (Trial Court Order, R. 83a). The court then designated a date for a jury trial on the issue of damages.

Appellee filed an appeal in the Commonwealth Court. On appeal, the Department once again argued that Appellee had waived his claim that his remaining property is landlocked due to his failure to file preliminary objections pursuant to Section 406(a). Like the trial court, the Commonwealth Court rejected the Department's argument, ruling that Appellee's claim was not the sort of issue that falls within the statute's purview. *In re Condemnation of Right of Way for State Route 0079, Section W10,* 727 A.2d 618, 623–24 (Pa.Cmwlth. 1999).

The Commonwealth Court reversed, however, as to the trial court's holding that Appellee's remaining acreage was not landlocked because the Department had insured Appellee's access to Grudevich Road by its subsequent condemnation of the Driveway. Relying on its prior decision in *Appeal of Philadelphia Electric Co.,* 135 Pa.Cmwlth. 100, 580 A.2d 424 (1990), *alloc. denied,* 528 Pa. 615, 596 A.2d 161 (1991), the court held that Section 602(a) of the Code does not allow the

admission of evidence relating to actions the Department took in February 1997. The court stated: "[b]y focusing on the subsequent condemnation, the trial court erroneously based its decision on evidence properly excluded for the purpose of after value." *Id.* at 622, 596 A.2d 161. Tacitly approving of the consideration that the trial court gave in its holding to the fact that Appellee and his family had continually used and maintained the Driveway since 1938, the Commonwealth Court remanded the case to the trial court for a determination as to "whether [Appellee] had any interest, be it right-of-way, easement, license or irrevocable license over the Sliver and the effect of that interest, if any, on whether [Appellee's] property was landlocked when determining the after value." *Id.* at 624, 596 A.2d 161. This appeal taken by the Department followed.

 The issues before us as to the meaning of Sections 406(a) and 602(a) raise, of course, questions of statutory construction.[4] As with all such questions, the rules set forth in the Statutory Construction Act (the "Act") govern. 1 Pa.C.S. §§ 1501–1991.

Under the Act, the object of interpreting Sections 406(a) and 602(a) is to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a); *Frontini v. Commonwealth Dep't of Transp.,* 527 Pa. 448, 593 A.2d 410, 411–12 (1991). In this regard, the language the General Assembly used in the statutes controls. 1 Pa.C.S.A. § 1921(a)–(b); *Commonwealth v. Pope,* 455 Pa. 384, 317 A.2d 887, 889 (1974). A court must give effect to the obvious meaning of clear and unambiguous statutory language, and such language

---

4. In this case, our review is limited to determining whether the trial court abused its discretion or committed an error of law or whether the findings of fact are supported by the substantial evidence. *Denes v. Pennsylva-* *nia Tpk. Comm'n,* 547 Pa. 152, 689 A.2d 219, 222 (1997). As the proper construction of the Code implicates a pure question of law, our review is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

cannot be disregarded under the pretext of pursuing the statute's spirit. 1 Pa.C.S. § 1921(c). The words and phrases of a statute are construed according to their common and approved usage. 1 Pa.C.S. § 1903(a). Lastly, the Act specifically states that all provisions conferring the power of eminent domain must be strictly construed. 1 Pa.C.S. § 1928(b); *Butler Fair & Agric. Ass'n v. School Dist. of Butler* 389 Pa. 169, 132 A.2d 214, 219 (1957).

■ We turn first to the Department's argument that Appellee violated the dictates of Section 406(a) by failing to file preliminary objections raising the claim that the condemnation landlocked his remaining property. Section 406(a) provides in relevant part:

> Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has previously been adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

26 P.S. § 1–406(a).

■ The Commonwealth Court has repeatedly stated, and we agree, that "[p]reliminary objections under Section 406 of the Code are intended as a procedure to resolve expeditiously all legal and factual challenges to the declaration of taking before the parties move to the second distinct proceeding of qualifying damages." *See, e.g., West Whiteland Associates v. Commonwealth, Dep't of Transp.*, 690 A.2d 1266, 1268 (Pa.Cmwlth.1997), *alloc. denied*, 550 Pa. 714, 705 A.2d 1313 (1997).

The proper characterization of the question that Appellee's landlocking claim raises lies at the heart of the parties' dispute over Section 406(a)'s dictates. On the one hand, the Department argues that Appellee's claim challenged the "scope" of both the declaration of taking and the taking itself; it essentially asserted a *de facto* condemnation of Appellee's entire property; it objected to the inclusion of the Driveway on the property plat contained in the declaration of taking; and it questioned the Department's "right" to appropriate the property as portrayed. (Appellant's Brief at 14; Appellant's Reply Brief at 1–2). On the other hand, Appellee asserts that he did not pursue a theory of a *de facto* total taking nor challenge the Department's authority, procedures, or the declaration of taking. Instead, his claim related to "value", to the "[just] compensation" to which he is entitled for the "impact" the Department's condemnation had on the remaining portion of his property. The claim was not, therefore, an appropriate subject for preliminary objections. (Appellee's Brief at 4).

In support of its position, the Department relies on the Commonwealth Court's opinion in *West Whiteland*, and urges us to follow it. In *West Whiteland*, the Department filed a declaration of taking in June of 1989 that included a plot plan and property plat showing property consisting of 71.526 acres before condemnation and 23.866 acres after the taking. The condemnee did not file preliminary objections. Almost four years later, the condemnee petitioned for the appointment of a board of viewers, and requested additional compensation based on the allegation that his property before the taking actually consisted of 179 acres.

The Department argued that because the condemnee failed to file preliminary objections pursuant to Section 406(a), he

had waived the right to raise his claim. The Commonwealth Court agreed. The court first observed that in accordance with Sections 402 and 405 of the Code, 26 P.S. §§ 1–402, 405(c)(8), respectively, the Department had included in the declaration of taking a description of the property condemned and a reference to the place where the plans showing the condemned property were recorded and could be inspected, and had sent the condemnee a plot plan showing his entire property and the area taken. The court then concluded that the issue the condemnee sought to contest, i.e., "the size of Condemnee's entire property", related to "information that must be included in the declaration of taking and notice of condemnation," and was so basic to the case that it had to be decided at the earliest possible stage by the filing of preliminary objections. *Id.* at 1269.

In this case, by contrast, Appellee's claim did not challenge the Department's description of his entire property or the Department's description of the property taken. Moreover, it did not, as the Department argues, object to the property plat incorporated in the declaration of taking or object to the Department's authority as reflected therein. Indeed, Appellee had no reason to make such objections. From Appellee's perspective, the plat accurately reflected his understanding that following the taking, his property would have no remaining frontage on Grudevich Road; that the Driveway connected his land to that thoroughfare; and that the Driveway was on the Dagshers' property.

Rather, we find, as Appellee asserts, that his claim went to the value of his remaining property after the condemnation, a value that he contended was diminished due to a lack of legal access to Grudevich Road. This is not a matter that

Section 406(a) designates must be raised by preliminary objections.

This same precept was evident in *Matter of North Huntingdon Township*, 36 Pa. Cmwlth. 1, 387 A.2d 183 (1978). In that case, the condemnor filed a declaration of taking for a right-of-way or easement. The condemnees did file preliminary objections, asserting, *inter alia*, that the declaration of taking incorrectly stated the nature of the title acquired and the description of the property condemned. According to the condemnees, under the guise of condemning an easement, the effect of the condemnor's action was to take all of their property by rendering it valueless. The Commonwealth Court affirmed the order below dismissing the preliminary objection. The court explained: "[t]he condemnees are seeking a judicial determination of the value of their property after condemnation of the easement for the sewer line. This is not a judicial function. The condemnees are entitled to the difference between fair market value of their property before and after the condemnation, both values to be fixed by a jury . . . .; they are not entitled to a judicial declaration that their property has no value after the take." *Id.* at 184. The court further stated: "[t]his is not a case . . . of a preliminary objection raising a de facto taking; the condemnees have failed to describe anything done to their property by the condemnor other than it has condemned an easement which destroyed the property's value." *Id.*

Accordingly, we hold that Appellee's claim, which related to the value of his remaining property as affected by the taking, was not required to be, nor could it have been, raised by preliminary objections under Section 406(a).

■ Next, we determine whether under Section 602(a), evidence regarding the Department's taking of the Driveway on the

Dagshers' property in February of 1997, four years after the condemnation of Appellee's land on April 23, 1993, is admissible.

Section 602 sets forth the Code's "Measure of damages", and governs the "just compensation" a condemnee is awarded in eminent domain proceedings. 26 P.S. § 1–602(a). In *Chester Township v. Commonwealth, Dep't. of Transp.*, 495 Pa. 369, 433 A.2d 1353, 1355 (1981), we stated that "[t]he fundamental principle underlying the requirement of 'just compensation' is one of indemnity: a condemnee is entitled to be placed in as good a position pecuniarily as if his property had not been taken."

■ To that end, a common law principle developed to calculate just compensation fairly and predictably. This principle is commonly referred to as the "before and after rule", and provides that just compensation consists of the difference between the fair market value of the condemnee's property immediately before the taking and as unaffected thereby, and the fair market value of his property remaining immediately after the appropriation and as affected by the taking. *Pennsylvania Gas & Water Co. v. Pennsylvania Turnpike Comm.* 428 Pa. 74, 236 A.2d 112, 116 (1967).

The General Assembly specifically incorporated the "before and after rule" into Section 602(a). 26 Pa.C.S. § 1–602(a), Comment—Joint State Government Commission 1964 Report.[5] Section 1–602(a) states:

§ 1–602. Measure of damages

(a) Just Compensation shall consist of the difference between the fair market value of the condemnee's entire property

interest immediately before the condemnation and as unaffected thereby and the fair market value of this property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

26 P.S. § 1–602(a).

The gist of the Department's argument in this appeal is that an interpretation of Section 602(a) which serves to exclude evidence of the Department's 1997 taking of the Driveway is erroneous because it is unduly "narrow" and "temporal". (Appellant's Brief at 18). According to the Department, under our decision in *Frontage Inc. v. Allegheny County*, 400 Pa. 249, 162 A.2d 1 (1960), Section 602(a)'s "principle of valuation on the date of taking is [not] so inflexible as to ignore all circumstances occurring after a taking", and only precludes the introduction of "speculative testimony designed to improperly reduce just compensation based on circumstances that do not exist at the time of trial and may never occur." (Appellant's Brief at 18). The Department further complains that the Commonwealth Court's holding is unfair, and that it penalizes it for remedying the unintended effects of a taking prior to their impact and affords a windfall to the Appellee. (Appellant's Brief at 21–23).

Appellee's counter-argument is straightforward. Given the plain meaning of the words with which the General Assembly expressed its intent in Section 602(a), the value of his remaining property "immediately after" the taking cannot be determined by reference to an event which took

---

5. The 1964 Comment to 26 P.S. § 1–602(a) states that "[t]his section sets forth what damages the condemnee is entitled to when his property is condemned. The first paragraph of this section codifies the existing case law

by adopting the 'before and after rule', which is firmly entrenched in the law. *Brown v. Commonwealth*, 399 Pa. 156, [159 A.2d 881] (1960)...." Comment—Joint State Government Commission 1964 Report.

place four years thereafter. 26 P.S. § 1–602(a).

Based on guiding principles of statutory construction, we agree with Appellee. In our view, the measure of damages in eminent domain cases under Section 602(a), which is framed in terms of a limited window of time, could not have been stated more precisely. It provides that just compensation is the difference in relevant fair market values *"immediately before"* and *"immediately after"* a condemnation. 26 P.S. § 1–602(a) (emphasis added). The General Assembly's use of the word "immediately" in Section 602(a) literally allows for no lapse between the taking and the point at which a condemnee's remaining property is valued.[6] Clearly then, in light of the plain meaning of the statute, the Department's position is unsustainable.

Likewise, the Department's contention that our decision in *Frontage* stands for the proposition that Section 602(a) precludes only the admission of evidence relating to circumstances that are speculative is meritless.[7] In *Frontage,* the condemnor condemned certain property owned by the condemnee for the purpose of constructing terminal facilities at the Greater Pittsburgh Airport. The property had frontage on the Airport Parkway. Thereafter, Commonwealth officials indicated that they intended to declare the Airport Parkway a limited access highway, which would have eliminated access to the Airport Parkway from the condemnee's property. At the date of the taking and at the date of trial, the Airport Parkway had not been designated. Nevertheless, at trial, the court allowed counsel for the condemnor to cross-examine a witness for the condemnee about the Commonwealth's unexecuted intentions with regard to the Airport Parkway, and to obtain from him an admission that without access to that road, the remaining property had a fair market value of only half as much as the amount to which he had previously testified.

Finding that the trial court erred in allowing such questioning, we reversed the judgment and granted the condemnee a new trial. Our holding was based on the requirement in the "before and after rule" that damages in eminent domain cases be assessed at the date of taking. We stated:

> [The condemnor], in its brief, has strenuously contended that this line of inquiry was relevant because 'It is obvious that the plaintiff [appellant], before the Board of Viewers and before the jury, predicated its whole theory of damages in this case on free access to the Airport parkway.' And well it might—*it had such access as of the date of the taking* ....That the Parkway has not been declared a limited access highway to this day is the strongest indication that statements by public officials do not always bear fruition. Moreover, the fundamental principle of the law of eminent domain is that market value is determined upon the date of taking.

*Id.* at 4 (emphasis in original). We also observed that the hypothetical question propounded to the witness based upon a nonexisent state of facts was highly misleading, speculative and confusing to the

---

**6.** The dictionary defines "immediately" as follows: "1. without lapse of time; without delay; instantly; at once .... 2. with no object or space intervening. 3. closely .... 4. without intervening medium or agent; concerning or affecting directly .... 5. the moment that; as soon as." The Random House Dictionary of the English Language 957 (2nd ed.1987).

**7.** *Frontage* arose and was decided prior the passage of the Code. We were, therefore, considering the "before and after rule" as developed in case law.

jury. *Id.* at 4–5. We did not, however, as the Department suggests, interpret the "before and after rule" as disallowing no more than the introduction at trial of mere possibilities. In *Frontage*, we held that the condemnor's evidence was inadmissible under the "before and after rule" because it was not relevant, not because it was speculative. *See id.* at 5–6.

This is not the first time we have been invited to expand the traditional application of "before and after rule", currently embodied in Section 602(a). In *Dyer v. Commonwealth*, 396 Pa. 524, 152 A.2d 760 (1959), the Commonwealth's Department of Highways ("Commonwealth") sought to introduce proof of a certain action taken by the condemnees after the condemnation for purposes of establishing just compensation.[8] We held that the proof was inadmissible. We find the reasons for our decision in *Dyer* as compelling today as they were when we decided that case.[9]

In *Dyer*, the Commonwealth condemned 3.97 acres of the condemnees' 20.3 acre tract. One of the improvements on the condemned portion of appellees' tract was a multiple dwelling. Subsequent to the taking, the condemnees relocated the dwelling to a portion of their land that was not condemned. The parties contested the amount of damages, and eventually went to trial. At a pretrial conference, the Commonwealth asserted that the measure of damages should be the difference between the value of the entire 20.3 acre

tract before the condemnation, including all the buildings situated thereon, and the value of the remaining tract after the condemnation, including the multiple dwelling that the condemnees had relocated. The Commonwealth submitted a written offer of proof of such values, which the trial court refused. The jury was instructed instead that the multiple dwelling was to be considered in fixing the value of the land prior to the condemnation, but was to be excluded from its consideration in determining the value of the remaining uncondemned portion of appellees' land. The Commonwealth appealed.

We affirmed, determining that the Commonwealth's offer of proof was properly rejected as contrary to the "before and after rule":

> With the "taking" by the Commonwealth of appellees' land it acquired title, subject to appropriate compensation therefor, not only to the soil thereof but to all the improvements thereon, including the multiple dwelling. Upon the "taking" the owner-appellees acquired the right to be compensated for the difference in the value of their land, including the improvements thereon, *immediately* before and *immediately* after the "taking"; such right to compensation was not subject to qualification by the fact that between the time of taking and the time of actual construction of the highway the multiple dwelling had

---

**8.** *Dyer* also arose and was decided prior the passage of the Code. Again, we were considering the "before and after rule" as developed in case law.

**9.** In this regard, we and the dissent part ways. The dissent contends that certain sections in the Code, like 26 P.S. § 1–705 or § 1–603, indicate a change in the law, such that the traditional understanding of the "before and after rule" as articulated in *Dyer* is no longer controlling. We disagree. The Com-

ment—Joint State Government Commission 1964 Report to 26 P.S. § 1–602(a) explicitly states that 26 P.S. § 1–602(a) embodies the "before and after rule" as the courts in Pennsylvania developed and applied it before the Code's enactment. *See supra* n. 5. Moreover, we can find no support for the dissent's proposition that the legislature meant to liberalize or relax the traditional "before and after rule" with its enactment of 26 P.S. § 1–705(2)(v) or any other Code section.

been removed to another location on the uncondemned portion of their land. To hold otherwise would be to ignore well-recognized and established rules in eminent domain proceedings and would add confusion in an already complicated field of the law.

*Id.* at 762 (emphasis in original) (footnote omitted).

In response to the Commonwealth's complaint that under the circumstances, application of the rule was essentially unfair, forcing it to pay an excessive amount in damages to appellees, we pointed out that the Commonwealth should consider pursuing alternative remedies:

> The Commonwealth argues that, by the application of this rule, it is forced to pay the value of the multiple dwelling as such value is reflected in the "before" value and at the same time permit the owner-appellees to retain the multiple dwelling itself. The Commonwealth, however, does not lack a remedy in this situation. The owner-appellees are subject to an action in trespass for the removal of the dwelling, title to which had been acquired by the Commonwealth. Furthermore, if, as the owner-appellees contend, the Commonwealth had agreed to removal of the building—denied by the Commonwealth—the Commonwealth would have an action for the fair value thereof.

*Id.* at 762–63.

We then concluded that under our holding, the interest of both parties was served, and discussed the adverse consequences that would follow in eminent domain proceedings if the "before and after rule" were ignored. Our conclusion, which we embrace in this case, bears repeating:

> Under the views herein expressed, the interest of both the Commonwealth and the landowners are fully protected. If appellees' action in removing this multi-

ple dwelling after the "taking" resulted in a loss to the Commonwealth, the Commonwealth has its remedy to recoup such loss. On the other hand, to permit the establishment and the recoupment of such loss in this condemnation proceeding would be not only contrary to our salutary and well-established "before" and "after" rule but would be productive of an impractical and unworkable measure of damages.

> "Proofs of countervailing collateral matter will follow the introduction of collateral matter; confusion of the issue on trial will be worse confounded; and litigation over damages of land taken by condemnation will become truly interminable."

*Id.* at 763 & n. 4 (quoting *Berger v. Public Parking Auth.* 380 Pa. 19, 109 A.2d 709, 719 (1954) (Jones, J., dissenting)).

■ Next, we address the Department's assertion that a ruling which prohibits evidence of its subsequent condemnation of the Dagshers' property "deprives condemnors of the same fundamental fairness that is granted to condemnees" because condemnees have been allowed to present evidence of outlays expended to cure the impact of a partial taking on remaining property. (Appellant's Brief at 21). In support of its argument, the Department points to Section 705(2)(v) of the Code, 26 P.S. § 1–705(2)(v), which governs the evidence that a qualified valuation expert may present at a hearing before viewers or in the trial court. Section 705(2)(v) provides that "[a] qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value," and include in his testimony "[t]he cost of adjustments and alterations to any remaining property made necessary or reasonable required by the condemnation." 26 P.S. § 1–705(2)(v). This case, however, in-

volves the proper construction of Section 602(a). To the extent that the Department believes that Section 602(a) treats condemnors unfairly in light of the evidentiary provisions set forth in Section 705(2)(v), the Department should take up this matter with Pennsylvania's Legislature. We cannot rewrite Section 602(a) to suit the Department's notions of fairness.[10]

■ Turning last to the Department's concern that without consideration of the subsequent condemnation, Appellee may be unjustly enriched because the Department mitigated the impact of the condemnation prior to any termination of Appellee's access to Grudevich Road and a final determination of damages, the principle that guides us is quite clear. Even assuming that the Department's concern has merit, we cannot disregard the plain meaning of Section 602(a) in this one case in order to advance its spirit. *See* 1 Pa.C.S. § 1921(c).

Thus, we hold that under Section 602(a), evidence of the Department's condemnation of the Driveway on the Dagshers' property in February of 1997 is inadmissible on the issue of Appellee's damages.

■ At the time of the condemnation of Appellee's land on April 23, 1993, however, the substantial evidence of record reveals that Appellee was using and maintaining the Driveway, as he had used and maintained it for a number of years, and that he continued to use and maintain the Driveway after the taking. Under the circumstances, Appellee may have had before and/or after the time of taking a legal interest in the Driveway, the existence of which may have relevance to Appellee's landlocking claim as to his remaining property, and to the calculation of just compensation.

Accordingly, we affirm the order of the Commonwealth Court, which reversed the trial court and remanded this case to the

10. We, unlike the dissent, do not believe that the evidence the Department sought to introduce constitutes "[t]he cost of adjustment and alteration to any remaining property made necessary or reasonably required by the condemnation" within the meaning of that section. As stated in the Comment—Joint State Government Commission 1964 Report, 26 P.S. § 1–705(2)(v) covers a principle which the courts applied before the Code's enactment and which this court set forth in *Puloka v. Commonwealth*, 323 Pa. 36, 185 A. 801 (1936) as follows:

'Estimates as to the costs of rebuilding specific items of property or injury to particular uses affected by the taking are not recoverable or admissible as distinct items of damage, but such losses may become useful as elements bearing on the market value before and after the appropriation.' Here the elements of damage shown were separation of buildings by the road, interference with access, additional costs of fencing, and alteration of grades.

*Id.* at 803 (quoting *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 176 A. 13, 14 (1934)).

The cases we have reviewed reveal that the evidence which has been admitted on fair market value pursuant to the principle articulated in *Puloka* or under 26 P.S. § 1–705(2)(v) is evidence of the cost of restorative measures typically undertaken by the condemnee to correct a condition that the condemnation of a portion of his property imposed on the property he continued to own. *See, e.g., Westinghouse*, 176 A. at 13 (costs of filling and building abutments and retaining walls); *Parry v. Cambria & I.R. Co.*, 247 Pa.169, 93 A.336 (1915) (cost of additional fencing); *Patton v. Philadelphia*, 175 Pa. 88, 34 A. 344 (1896) (costs of filling a lot); *Dawson v. Pittsburgh*, 159 Pa. 317, 28 A. 171 (1893)(costs of raising a house); *Middletown Twp. v. Baker*, 105 Pa. Cmwlth. 1, 522 A.2d 1182 (1987) (costs of restoring trees, soil, grass, electric and water lines).

In light of this teaching, we do not see how proof of the Department's subsequent condemnation of a piece of property not owned by Appellee, but owned by his neighbors, constitutes an element of fair market value which falls under 26 P.S. § 1–705(2)(v).

trial court for a determination of those matters.

Justice NEWMAN did not participate in the consideration or decision of this case.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Chief Justice ZAPPALA files a dissenting opinion in which Justice CASTILLE joins.

Chief Justice ZAPPALA, dissenting.

I agree that Condemnee, Dennis Sluciak, was not required to file preliminary objections to the declaration of taking filed by Condemnor, the Commonwealth of Pennsylvania, Department of Transportation, pursuant to Section 406 of the Eminent Domain Code,[1] hereinafter "the Code." Yet, I cannot agree that, under Section 602(a) of the Code, evidence of the Department's February 1997 condemnation of the driveway that runs across Rudolph and Marian Dagsher's property, hereinafter "the driveway," is inadmissible in determining the fair market value of Condemnee's remaining property.

Section 601 of the Code states that "[t]he condemnee shall be entitled to *just* compensation for the taking, injury or destruction of his property, determined as set forth in this article."[2] 26 P.S. § 1–601 (emphasis added). To determine the amount of just compensation to which a condemnee is entitled, we look to Section 602 of the Code, which provides, in pertinent part:

### § 1–602. Measure of damages

(a) Just compensation shall consist of the difference between the *fair market value* of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the *fair market value* of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

26 P.S. § 1–602(a) (emphasis added). In applying this analysis, courts must make two assessments of the fair market value of a condemnee's property interest: one immediately before and one immediately after the taking.

While the Code demands that courts *assess* fair market value at two exact moments in time, it simultaneously recognizes that the fair market value itself could be affected by considerations that occur later in time. To clarify the proper considerations in calculating the fair market value of a condemnee's property interest, Section 603 of the Code defines "fair market value" as:

### § 1–603. Fair market value

Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors:

(1) The present use of the property and its value for such use.

---

1. Act of June 22, 1964, Sp.Sess., P.L. 84, arts. I to IX, *as amended*, 26 P.S. §§ 1–101 to 1–903.

2. In Pennsylvania, a condemnee's right to just compensation derives from the Pennsylvania Constitution, Article I, Section 10 ("[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or

secured.") and Article X, Section 4 ("Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements and compensation shall be paid or secured before the taking, injury or destruction.").

(2) The highest and best reasonably available use of the property and its value for such use.

(3) The machinery, equipment and fixtures forming part of the real estate taken.

*(4) Other factors as to which evidence may be offered as provided by Article VII.*

26 P.S. § 1–603 (emphasis added). Thus, fair market value subsumes all of the factors within Section 603, as well as additional evidence permitted under Article VII.

Article VII, as invoked by Section 603, contains the Code's evidentiary rules for eminent domain proceedings. *See* 26 P.S. §§ 1–701 to 1–706. Section 702 allows condemnors to "present expert testimony of the amount of damages suffered by the condemnee." 26 P.S. § 1–702. Concurrently, Section 705 of the Code liberally outlines the extent of such expert testimony:

### § 1–705. Evidence generally

Whether at the hearing before the viewers, or at the trial in court on appeal:

* * *

(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property . . ., which testimony may include but shall not be limited to the following:

* * *

*(v) The cost of adjustments and alterations to any remaining property made necessary or reasonably required by the condemnation.*

26 P.S. § 1–705(2)(v) (emphasis added) (irrelevant portions omitted).

Adjustments and alterations to a condemnee's remaining property, as admissible under Section 705(2)(v), are by their very nature implemented after condemnation and usually after completion of the public work. Likewise, the costs of these "cures" are not expended until after the taking. Nonetheless, the Code mandates consideration of these post-condemnation factors in determining fair market value. Thus, Section 705 permits evidence of future curative measures that may properly affect the fair market value as assessed immediately before or immediately after the taking.[3] Indeed, the *Comment* to Section 705(2)(v) reaffirms that *"[t]hese matters, in keeping with the liberalization of the examination of the expert, should properly be considered since they affect fair market value."*

Here, Condemnor maintained Condemnee's uninterrupted access to the property by condemning the driveway.[4] While Condemnor implemented this curative measure after it had already condemned Condemnee's frontage along

---

**3.** The Legislature's liberal approach to the admissibility of future considerations in determining fair market value is apparent throughout the Code. *See generally* 26 P.S. § 1–705(2)(i) (permitting evidence of condemned property's sale price, if sale was made within reasonable time before or *after* condemnation); 26 P.S. § 1–705(2)(ii) (permitting evidence of condemned property's rental income under lease, if lease was in effect within reasonable time before or *after* condemnation); 26 P.S. § 1–705(2)(iv) (permitting evidence of the cost of *replacing or reproducing* existing improvements on the land); 26 P.S. § 1–705(3) (permitting parties to show difference

between condition of property and neighborhood at the time of condemnation and *at the time of view*). Unlike Subsections (2)(i) and (2)(ii) of Section 705, Subsection (2)(v) does not entail a "reasonable time" element.

**4.** Section 617.1 of the Code suggests that condemnors may "use a substitute for monetary just compensation." 26 P.S. § 1–617.1. While it is appealing to regard the condemnation of the driveway as a substitute for monetary just compensation in this case, Condemnor does not mention Section 617.1 in its brief.

Grudevich Road, the Code clarifies that its significance is not lost in determining fair market value. Specifically, condemnation of the driveway constitutes an adjustment or alteration to Condemnee's property under Section 705(2)(v), as it forever maintains Condemnee's rights of access, ingress, and egress. This adjustment of Condemnee's property rights is curative in nature and comports with the types of cures admissible under Section 705(2)(v). As the Legislature deemed that these cures "should properly be considered since they affect fair market value[,]" *see Comment* to Section 705(2)(v), the Commonwealth Court erred in reversing the order of the trial court, which admitted evidence of the driveway's condemnation in determining that Condemnee's property was not permanently landlocked.

In operation, this result allows the trial court to realistically assess Condemnee's damages, as a willing and informed seller and buyer would agree to a substantially higher price for a parcel of landlocked property if they were certain that access would eventually be permanently secured. Thus, as assessed immediately after the taking, the fair market value of Condemnee's remaining property would properly be affected by: (1) a technical and temporary landlocking, during which Condemnee never actually lost access; and (2) the condemnation of the driveway, which permanently secured Condemnee's right of access.

The majority's result, which compensates Condemnee for a permanent landlocking, belies the very import of *just* compensation. Condemnee's compensation is, as here purported, essentially not just; it effectively has become an unwarranted windfall. Furthermore, under the majority's analysis, Condemnor is mandated to pay twice: once to condemn the driveway, and once for the assumed landlocking.

This, in my opinion, is unacceptable. Accordingly, I would reverse the order of the Commonwealth Court.

The majority relies wholly on the language of Section 602(a), which requires assessment of fair market value immediately before and immediately after the taking. Yet, its analysis fails to acknowledge the Code's liberal approach to expert testimony in determining fair market value. Indeed, the majority's analysis does not consider the Code's definition of fair market value in Section 603 or any of the factors therein, such as those admissible under Article VII. The majority summarily dismisses Condemnor's reliance on Section 705(2)(v) by stating that "[t]his case, however, involves the proper construction of Section 602(a)." Majority Op. at 18. Despite this assertion, a proper construction of Section 602(a) requires Section 603's definition of fair market value, which in turn is expressly affected by evidence admissible under Article VII and, specifically, Section 705(2)(v). *See* 1 Pa.C.S. § 1932 (requiring that statutes *in pari materia* shall be construed together).

Furthermore, the majority's analysis is premised entirely upon pre-Code decisions; as the Code signified an explicit change in the law, the majority's dependence on these cases is inappropriate. First, the majority relies on *Dyer v. Commonwealth*, 396 Pa. 524, 152 A.2d 760 (1959). *Dyer*, however, is no longer reliable authority. In *Dyer*, we strictly adhered to the "before and after rule" because of our concern that permitting post-condemnation evidence "would be not only contrary to our salutary and well-established 'before' and 'after' rule but would be productive of an impractical and unworkable measure of damages." *Dyer*, 152 A.2d at 763. We further stated our suspicions that:

Proofs of countervailing collateral matter will follow the introduction of collateral matter; confusion of the issue on trial will be worse confounded; and litigation over the damages for land taken by condemnation will become truly interminable.

*Id.* at 763 n. 4 (quoting *Berger v. Public Parking Auth. of Pittsburgh*, 380 Pa. 19, 109 A.2d 709, 719 (1954)). Hence, *Dyer* mandated strict compliance with the common law "before and after rule" because of this Court's antagonism towards the introduction of collateral issues in determining just compensation.

The Legislature, however, has since enacted the Code, which became effective on June 22, 1964. 26 P.S. § 1–302. The *Comment* to Section 705 reveals that the Legislature intended a liberal approach to the admissibility of future considerations in determining fair market value: "It is intended by this clause to *change existing law* which severely restricts the testimony of the expert witness on the ground that 'collateral issues' are introduced." The Legislature's express intent to broaden the scope of expert testimony clearly evinces its disagreement with our holding in *Dyer*. Thus, I find the majority's reliance on *Dyer* unsupportable.

Second, the majority relies on *Frontage, Inc. v. Allegheny County*, 400 Pa. 249, 162 A.2d 1 (1960). Like *Dyer*, we decided *Frontage* before the Legislature enacted the Code. Thus, *Frontage* could not have contemplated the Legislature's intent to broaden the scope of expert testimony regarding fair market value.

Moreover, *Frontage* is distinguishable on its facts. The condemnee in *Frontage*

owned 8,859 acres of property that lay adjacent to the Pittsburgh airport and fronted along 1,080 feet of the airport parkway. Two separate government takings affected this property. First, in 1955, the Governor and the Secretary of Highways publicly indicated their intent to designate the airport parkway as a "limited access highway."[5] The designation would have completely severed the condemnee's access to the airport parkway, but, as the Secretary of Highways never submitted plans for the designation, the condemnee maintained access to the parkway throughout the litigation of *Frontage*. *Id.* at 4. Second, in 1956, Allegheny County condemned the property to expand the airport.

In a jury trial to determine the condemnee's just compensation for the condemnation, the County argued that that the seemingly imminent "limited access highway" designation had depreciated the *pre-condemnation* fair market value of the condemnee's property. On appeal, however, this Court held that condemnors may not seek to depreciate the pre-taking value of a condemnee's property on account of "a threat to condemn or a threat to limit [a] property's access to an abutting highway." *Id.* at 5.

The case *sub judice* does not ask whether the effect of a seemingly imminent highway designation or condemnation is admissible regarding a property's pre-condemnation value. Rather, this Court must here determine whether the effect of a curative adjustment or alteration is admissible regarding a property's post-condemnation fair market value. Indeed, the Code distinguishes between imminent condemnations that depreciate

---

**5.** The Limited Access Highways Act defines a limited access highway as "a public highway to which owners or occupants of abutting property or the traveling public have no right of ingress or egress to, from or across such highway, except as may be provided by the authorities responsible therefor." Act of May 29, 1945, P.L. 1108, §§ 1–15, *as amended,* 36 P.S. §§ 2391.1–2391.15.

pre-taking value, as was the case in *Frontage*, and evidence of future curative measures affecting post-taking value, as is the case here. Section 604 of the Code provides:

> **§ 1–604. Effect of imminence of condemnation**
>
> Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value.

26 P.S. § 1–604. Thus, the Code, which permits evidence of post-condemnation curative adjustments and alterations, *see supra*, expressly excludes evidence of the depreciating effects of an imminent condemnation on the pre-taking value of a condemnee's property.[6] In view of the Code's disparate treatment, I fail to find *Frontage*, a pre-Code decision, persuasive or even relevant.

Therefore, I dissent.

Justice CASTILLE joins this dissenting opinion.

---

**6.** While our Court has never expressly held that a "limited access highway" designation is a condemnation that constitutionally requires just compensation, there is strong evidence that a landowner's loss of access would require just compensation. Indeed, the United States District Court for the Western District of Pennsylvania held that the Limited Access Highways Act is unconstitutional, as it only provides compensation to landowners whose property is actually taken, thus denying compensation to landowners that lose access due to a "limited access highway" designation. *Creasy v. Stevens,* 160 F.Supp. 404 (W.D.Pa. 1958), *probable jurisdiction noted,* 358 U.S. 807, 79 S.Ct. 38, 3 L.Ed.2d 53 (1958), *reversed* 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959) (holding that, since condemnees' right to just compensation for loss of access may be protected in a proceeding before viewers, the District Court erred in entertaining a federal action where the condemnees had not yet proceeded before viewers); *see also Breinig v. Allegheny County,* 332 Pa. 474, 2 A.2d 842, 847 (1938) (noting that right of access, ingress, and egress cannot be taken without compensation under the law; it is a property right, protected by the Constitution).