**[J-27-2018] [OAJC: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| STEPHEN J. SZABO AND MARY B. SZABO, | : | No. 46 WAP 2017 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Commonwealth Court entered April |
| | : | 12, 2017 at No. 2039 CD 2015, |
| | : | reversing the Order of the Court of |
| v. | : | Common Pleas of Washington County |
| | : | entered October 6, 2015 at No. 2013- |
| | : | 7608 and remanding. |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| DEPARTMENT OF TRANSPORTATION, | : | ARGUED: April 11, 2018 |
| | : | |
| Appellant | : | |

**CONCURRING OPINION**

**JUSTICE WECHT**                                      **DECIDED: FEBRUARY 20, 2019**

I agree that Stephen and Mary Szabo are entitled to an evidentiary hearing to clarify the property interests subject to the taking at issue in this case, in furtherance of their effort to determine the just compensation to which they are constitutionally entitled.[1] The plan attached to the Pennsylvania Department of Transportation's declaration of taking omitted any indication that PennDOT's planned road expansion implicated not only parcel 5, which the Szabos undisputedly owned, but also adjacent parcels 1 and 9, the

---

[1] *See* PA. CONST. art. 1 § 10 ("[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."); PA. CONST. art 10 § 4 ("Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements and compensation shall be paid or secured before the taking, injury or destruction.").

ownership and boundaries of which are disputed. Had PennDOT's declaration of taking informed the Szabos that the plan entailed utilizing portions of parcels 1 and 9, the Szabos reasonably might have been charged with recognizing sooner what only the commencement of construction ultimately revealed: that the plan did not accurately reflect the possible incursion upon their interests in the parcels designated 1 and 9, rendering PennDOT's proposed compensation insufficient.[2]

Notably, PennDOT's own plan hinted at uncertainty regarding the relevant boundaries and titles to the three parcels at issue. As the Opinion Announcing the Judgment of the Court ("OAJC") relates, PennDOT acknowledged in its plan that the depicted boundaries separating the three parcels were "probable [sic] correct," that PennDOT had discovered errors in the chain of title, and that, despite these uncertainties, the lines "were not surveyed by the professional land surveyor responsible for the project." OAJC at 2-3 (quoting Declaration of Taking Property Plan, 12/3/2012, at Sheet 1 of 2). As well, the plan did not indicate that, before PennDOT served notice of the condemnation of parcel 5 upon the Szabos, parcel 1 previously had been condemned by PennDOT, and Peters Township had sold parcel 9 to PennDOT in lieu of condemnation. *Id.* at 3.

Under the Eminent Domain Code, 26 Pa.C.S. §§ 101, *et seq.* ("the Code"), PennDOT bore the legal burden of informing the Szabos of the full scope of the taking of their property. *See* 26 Pa.C.S. § 302(b); *see also* OAJC at 10-11. Given its acknowledged uncertainty regarding the property boundaries, PennDOT should have conducted a more penetrating investigation before filing the declaration. At a minimum,

---

[2] We are asked to consider whether the Szabos are entitled to an evidentiary hearing on their claims in this and other regards. The factual predicates for their claims are disputed, but these disputes played no role in the trial court's finding of waiver, except inasmuch as the court found that they encompassed the sort of matter that should have been raised in preliminary objections to the declaration itself. Since the factual assertions, as stated, were deemed insufficient to avoid waiver, the trial court effectively accepted them at face value. For purposes of analysis, I do the same.

its plan should have indicated the full scope of the work upon all three parcels, if any, as a hedge against the plan's possibly flawed or inaccurate account of the three parcels' ownership. Instead, PennDOT served upon the Szabos a plan that informed them only of the portion of parcel 5 to be taken, leaving the Szabos no reason to anticipate that portions of parcels 1 and 9 also would be taken. To deny the Szabos just compensation for the entirety of their interests subject to the taking as a consequence of PennDOT's errors or omissions would turn the statutory scheme on its head in derogation of the time-honored rigor we demand of condemnors in exercising their constitutionally circumscribed power of eminent domain.[3]

I write separately because I believe that the OAJC's learned analysis identifies, but does not clearly resolve, irregularities in the case law under the Code that cannot be avoided in this case. The compensation issue here hinges upon a factual determination of the Szabo's property interest relative to PennDOT's taking. The Commonwealth Court has held generally that questions pertaining to the nature and scope of property to be taken must be adjudicated by the Court of Common Pleas upon the timely filing of preliminary objections to the declaration of taking, and that the failure to raise such questions in that pleading, within the time constraints that apply, will result in waiver. *See West Whiteland Assoc. v. Commonwealth, Dep't of Transp.*, 690 A.2d 1266, 1269 (Pa. Cmwlth. 1997); *In re Condemnation by the Commonwealth of Pa., Dep't of Transp., Appeal of Bernstein*, 535 A.2d 1210, 1214 (Pa. Cmwlth. 1988). However, the *relief* the Szabos seek, just compensation, is a matter excluded from the statutory procedure governing such preliminary objections. Instead, the power to determine compensation is

---

[3] *See* 1 Pa.C.S. § 1928(b) (providing that "[a]ll provisions of a statute" "conferring the power of eminent domain" must be strictly construed); *see also Pagni v. Commonwealth*, 116 A.2d 294, 295 (Pa. Super. 1955) ("Statutes concerning eminent domain are to be strictly construed.").

delegated by statute in the first instance to a court-appointed board of viewers, and is subject to a distinct set of procedures under the Code. Further complicating matters, a board of viewers' jurisdiction is statutorily limited to assessing the value of a defined property interest that has been taken, and does not extend to fact-finding regarding the fact and extent of the taking itself.

Commonwealth Court case law under the Code sets something of a trap for the unsuspecting condemnee proceeding in good faith. Where, as here, the condemnee is provided no reason to raise a frontal challenge to the declaration of taking, the condemnee has no statutory warrant for filing preliminary objections, even if the condemnee anticipates the possibility of a subsequent challenge to the compensation that the condemnor provides. However, taking certain Commonwealth Court cases at face value, should subsequent events call into question the fairness of the compensation provided, the condemnee will find the courthouse door closed if his claim for compensation is founded upon a discrepancy in the original declaration and plan that implicates questions of ownership.

To cure this problem, we must look to the Eminent Domain Code, which by its terms "provides a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages." 26 Pa.C.S. § 102. Chapter Three, entitled "Procedure to Condemn," outlines the process by which a condemning authority may exact a taking and the ways in which a condemnee may challenge the condemnor's authority to do so. *Id.* §§ 301-10. Chapter Five, "Procedure for Determining Damages," and Chapter Seven, "Just Compensation and Measure of Damages," outline procedures for valuing condemned property. *Id.* §§ 501-22, 701-16.

Section 302 of the Code specifies that "the power of condemnation given by law to a condemnor shall be effected only by the filing in court of a declaration of taking with

the security required under section 303(a)."[4]  *Id.* § 302(a)(1).  The declaration of taking

must include, *inter alia*:

> (5)  A description of the property condemned, sufficient for identification . . .,
> a reference to the place of recording in the office of the recorder of deeds
> of plans showing the property condemned or a statement that plans
> showing the property condemned are on the same day being lodged for
> record or filed in the office of the recorder of deeds[;]
>
> (7)  A statement specifying where a plan showing the condemned property
> may be inspected in the county in which the property taken is located[; and]
>
> (8)  A statement of how just compensation has been made or secured.

*Id.* § 302(b).    Upon such a filing, title to the condemned property passes to the

condemnor, who is then entitled to possession, and the condemnee is entitled to

compensation.  *Id.* § 302(a)(2).  The condemnor must serve written notice of the filing of

the declaration upon the owner of the condemned property within thirty days of its filing.

The condemnee, in turn, may file preliminary objections to the declaration within

thirty days after service of notice of the taking.  However, the subject matter of the

permitted preliminary objections is limited to the following:

> (i) The power or right of the condemnor to appropriate the
> condemned property unless it has been previously adjudicated.
>
> (ii)  The sufficiency of the security.
>
> (iii)  The declaration of taking.
>
> (iv)  Any other procedure followed by the condemnor.

---

[4]    Section 303 of the Code provides that "every condemnor shall give security to
effect the condemnation by filing with the declaration of taking its bond, without surety, to
the Commonwealth for the use of the owner of the property interests condemned, the
condition of which shall be that the condemnor shall pay the damages determined by
law."  26 Pa.C.S. § 303(a).  However, if "a condemnor has the power of taxation, it shall
not be required to file a bond with the declaration of taking."  *Id.* § 303(b)(1)

26 Pa.C.S. § 306(a)(3). While "[f]ailure to raise by preliminary objections the issues listed in subsection (a) shall constitute a waiver," *id.* § 306(b), the Commonwealth Court has held that, where the alleged condemnee was not aware of the effect of the condemnor's action, waiver will not be imposed for failing to file preliminary objections. *See Commonwealth, Dep't of Transp. v. Greenfield Twp.-Property Owners*, 582 A.2d 41 (Pa. Cmwlth. 1990); *City of Pittsburgh v. Gold*, 390 A.2d 1373 (Pa. Cmwlth. 1978).[5]

Subsection 306(b) also unambiguously provides that "*[i]ssues of compensation may not be raised by preliminary objections.*" 26 Pa.C.S. § 306(b) (emphasis added). Rather, Chapter Five of the Code outlines the exclusive process for raising compensation-related claims. If the condemnor and the condemnee cannot agree as to compensation, "[a] condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers." *Id.* §§ 501-02. Upon filing such a petition, "unless preliminary objections [under Chapter Three] . . . warranting delay are pending, [the court] shall promptly appoint three viewers who shall view the premises, hold hearings and file a report." *Id.* § 504(a)(1). The board of viewers' report must include, *inter alia*, "a statement

---

[5]      *Greenfield Township* concerned an alleged *de facto* taking. A *de facto* taking occurs where "an entity clothed with the power of eminent domain has, by even a non-appropriative act, substantially deprived an owner of the beneficial use and enjoyment of his property." *See* OAJC at 9 & n.7 (quoting *Greenfield Twp.*, 582 A.2d at 44); *see also Gold*, 390 A.2d at 1376 ("Article X, Section 4 of the Pennsylvania Constitution provides recovery by an owner for the injury or destruction of his property by a municipality for a public use even where these is no taking and where neither negligence nor nuisance occasioned the injury."). Thus, a "formal divestiture of an owner's title" is not required to cause a *de facto* taking. *Greenfield Twp.*, 582 A.2d at 44; *see* 26 Pa.C.S. § 502(c) (allowing a petition for appointment of viewers where a condemnation is alleged to have occurred but "no declaration of taking has been filed"). In *Greenfield Township*, the court declined to impose waiver for failure to file preliminary objections to a declaration, because the damages asserted involved the landlocking of property that the condemnees did not anticipate based upon the plan provided by the condemnor.

of the total amount of damages and the distribution between or among the several claimants." *Id.* § 512.

Chapter 5 further provides a procedure for the condemnor to oppose the appointment of viewers. "Any objection to the appointment of viewers may be raised by preliminary objections filed within 30 days" of the filing of the petition. *Id.* § 504(d). "Objections to the form of the petition or the appointment or the qualifications of the viewers in any proceeding *or to the legal sufficiency or factual basis of a petition* . . . are waived unless included in preliminary objections [filed by the condemnor]." *Id.* (emphasis added). If an answer to those preliminary objections is filed and "an issue of fact is raised, *the court shall conduct an evidentiary hearing or order that evidence be taken by deposition or otherwise, but in no event shall evidence be taken by the viewers on this issue.*" *Id.* § 504(d)(5) (emphasis added). Thus, a condemnor is entitled to challenge, *inter alia*, the factual underpinnings of a condemnee's claim for compensation only by preliminary objections to a petition for the appointment of viewers. Once the petition is granted—or after thirty days if no objections are filed—the party objecting to the appointment of viewers waives its opportunity to do so and there exists no express statutory basis for an evidentiary hearing.

Conspicuously absent from these complementary provisions is a clear account of how to proceed under these circumstances. The plan provided to the Szabos allegedly misstated or omitted information critical to the Szabos' understanding of the property subject to the taking, principally by omitting any illustration of the effect of the intended construction upon parcels 1 and 9. Thus, without any reason to suspect that PennDOT's plans implicated interests beyond those designated on the plan with respect to parcel 5,

the Szabos did not file preliminary objections, leaving them only the option to challenge the compensation for the property *as delineated in the plan*. In due course, the Szabos filed a petition for the appointment of viewers. However, in that petition, which evidently was filed before PennDOT commenced construction, the Szabos made no mention of any interests outside parcel 5. When construction activities raised questions regarding their possible interests in parcels 1 and 9, the Szabos promptly filed a petition for an evidentiary hearing to address those questions.

Although the OAJC admirably seeks to reconcile available Commonwealth Court case law with the Code, I am unpersuaded. While the Code's structure suggests that the form of relief sought should dictate the procedure utilized, the case law more clearly focuses upon the basis upon which relief is sought. The Code plainly distinguishes structurally and by its terms between challenges seeking reversal of a condemnation and "issues of compensation." *Compare id.* §§ 306(a)(3)(i)-(iv) *with id.* § 306(b). Notably, the chapter pertaining to each provides a distinct process for addressing factual issues that arise in resolving the respective challenges. In each chapter, fact-finding is entrusted to the Court of Common Pleas. The board of viewers, vested only with authority to calculate compensation, expressly is precluded from addressing issues of fact that arise in connection with that inquiry. 26 Pa.C.S. § 504(d)(5).

The distinction between these two functions comports with the policy reflected in the Code, which seeks to balance the condemnor's authority to take land expeditiously for the public good against the property owner's right to just compensation. In furtherance of these goals, the Code requires a condemnee to raise any direct challenge to a condemnation within thirty days of notice via preliminary objections, ensuring expeditious

determination of the condemnor's right to title. However, the Code provides a separate framework for a condemnee to challenge the amount of just compensation without the strictures of a compressed time period. In this way, the Code balances expeditiousness in the transfer of title where it serves the public interest with an adequate process for determining just compensation for landowners who are deprived of their property rights. Thus, the form of relief, rather than the particular factual or legal predicates upon which relief is sought, must dictate the procedure.

This analysis is in tension with the trial court's and PennDOT's reliance upon *West Whiteland*. At issue in that case was the condemnee's desire to apply the unity of purpose doctrine, which provided that, "[w]here all or a part of several contiguous tracts owned by one owner is condemned or a part of several non-contiguous tracts owned by one owner which are used for a unified purpose is condemned, damages shall be assessed as if such tracts were one parcel." 26 P.S. § 1-605 (repealed).[6] PennDOT filed a declaration of taking indicating its intention to condemn approximately twenty-four acres of a seventy-one-acre parcel owned by the condemnee, leaving the condemnee approximately forty-seven acres. The condemnee did not file preliminary objections to the declaration. Several years later, condemnee filed a timely petition for the appointment of viewers, wherein condemnee requested additional compensation, but did not suggest any dispute regarding the size of the affected parcel. However, before the board of viewers, condemnee's witnesses testified that the size of the relevant property prior to the taking in fact comprised 179 acres, based upon the unity of purpose doctrine, and sought on that basis to modify compensation in condemnee's favor.

---

[6] The unity of purpose doctrine now is found in 26 Pa.C.S. § 705.

PennDOT argued that condemnee should have raised the unity of purpose doctrine in preliminary objections to the declaration, because it implicated the nature of the property subject to the taking. Thus, PennDOT argued, the condemnee's invocation of the doctrine was untimely and waived. The Commonwealth Court agreed, quoting its earlier decision in *Appeal of Bernstein* for the proposition that "the nature of the property interest a party possesses, if any, in an eminent domain proceeding is properly raised by preliminary objections, and the failure to raise the issue by means of preliminary objections constitutes a waiver of such issues." *West Whiteland Assocs.*, 690 A.2d at 1269 (quoting *Appeal of Bernstein*, 535 A.2d at 1214). Thus, notwithstanding that condemnee's claims pertained *only* to just compensation, the court effectively held that any property-related concerns that might later inform a compensation claim must be raised in preliminary objections to the declaration, even though a court hearing such objections may not consider questions of compensation.

Notably, while it has never expressly embraced the remedy-dictates-procedure approach that I believe best reflects the legislative intent reflected in the Code, this Court nonetheless has leaned toward it, and it did so in a case that postdates *West Whiteland* by over fifteen years. In *In re Condemnation by the Commonwealth of Pa., Dep't of Transp., of Right of Way for State Route 79*, 798 A.2d 725 (Pa. 2002) (hereinafter "*Sluciak*"), condemnee Sluciak owned a parcel of land that included frontage along a main public road. Despite the frontage, Sluciak did not have his own driveway; instead, he accessed the main road by using a driveway running over the corner of his neighbor's adjacent property. Seeking to expand an interstate on-ramp, PennDOT filed a declaration condemning all of Sluciak's property fronting the road. Sluciak did not file preliminary

objections to the declaration of taking. PennDOT provided compensation as required, but Sluciak petitioned the court to appoint viewers, arguing that the compensation was insufficient because the taking landlocked his property. The board of viewers found that Sluciak's property was not landlocked because he held an easement by necessity in his neighbor's driveway, and the board upheld the compensation provided.

Sluciak appealed the board's decision to the Court of Common Pleas. PennDOT moved to dismiss Sluciak's appeal on the basis that Sluciak had waived his claims because he had not raised the landlocking and access issues in preliminary objections to the declaration of taking. The court denied the motion to dismiss, but ultimately agreed with the viewers that Sluciak's property was not landlocked and set a date for a jury trial as to damages. Sluciak appealed. Again, PennDOT argued waiver, but the Commonwealth Court held that Sluciak had not waived his request for additional compensation by failing to raise it by preliminary objection. The Commonwealth Court also ruled in Sluciak's favor on the merits, and PennDOT sought allowance of appeal in this Court, which we granted.

In again pressing its waiver argument, PennDOT relied upon the Commonwealth Court's ruling in *West Whiteland*, which it argued compelled the conclusion that, because Sluciak's challenge depended on the property interests taken, it amounted to a challenge to the declaration of taking, which he failed to raise by preliminary objection. Sluciak disagreed, arguing that, because he sought to challenge the compensation, he neither was obligated nor permitted to raise his claim in preliminary objections.

This Court agreed generally that "[p]reliminary objections under . . . the Code are intended as a procedure to resolve expeditiously all legal and factual challenges to the

declaration of taking," *Sluciak*, 798 A.2d at 731. However, the Court nonetheless rejected PennDOT's waiver argument because Sluciak's "claim went to the value of his remaining property after the condemnation." *Id.* at 732. Specifically, Sluciak contended that the value of his remaining property was diminished due to a lack of legal access to the road. We held that this was "not a matter that [the Code] designates must be raised by preliminary objections." *Id.*

Here, again, PennDOT relies upon *West Whiteland* to support its claim that, because the nature and extent of the property taken is a predicate question in the instant compensation challenge, the Szabos' failure to file preliminary objections to the declaration waived that challenge. In so doing, PennDOT effectively insists that the predicate for relief sought, rather than the nature of that relief, determines when a condemnee must raise a challenge, on peril of waiver.

The OAJC rejects PennDOT's reliance upon *West Whiteland* by attempting to distinguish it from the instant case. The OAJC observes that, in *West Whiteland*, the condemnee undisputedly knew all of the information necessary to seek application of the unity of purpose doctrine within the time allotted for preliminary objections to the declaration. OAJC at 20. While the Szabos seek relief specifically due to a deficiency in the declaration, in *West Whiteland* PennDOT undisputedly had accurately described the parcel, and the portion thereof, that it sought to condemn. Thus, the OAJC concludes that the condemnee in *West Whiteland* was not similarly situated to the Szabos in this case, where their core contention is that the declaration did *not* give them all of the information they required to understand the full effect of the intended taking. In my view,

while this distinction has some superficial appeal, it ultimately lacks any material difference.

In both cases, the condemnee effectively accepted the *fact* of the taking, and acceded to PennDOT's authority to effectuate it. Thus, neither party objected to the validity of the taking or the vesting of title in PennDOT, which are the proper subjects of preliminary objections to the declaration, as noted in *Sluciak*. Rather, in each case, the condemnee raised matters ancillary to the taking solely in connection with calculating compensation. I discern no statutory basis to suggest that the mere ability to identify compensation-related questions during the short time period for objecting to the taking is dispositive of whether the condemnee must raise (or is even permitted by statute to raise) such questions in a context reserved for challenges to the taking *itself*.

Moreover, it is not at all clear to me that the OAJC's attempt to distinguish *West Whiteland* can be reconciled with our later decision in *Sluciak*. The facts in *Sluciak* strike me as more consistent with *West Whiteland* than with this case. In *Sluciak*, as in *West Whiteland*, the condemnee possessed all of the information at the time of the taking that he later relied upon in seeking to modify compensation. The property lines, the extent of the taking, even the long-standing utilization of the neighbor's driveway, all were within the condemnee's knowledge when the declaration of taking was served. Ultimately, we rejected waiver not because some critical fact had been omitted or was unavailable at the time of the declaration, but rather because the question of legal access was of concern solely for purposes of valuing the condemnee's remaining property, and therefore was "not a matter that . . . must be raised by preliminary objections." *Sluciak*, 798 A.2d at 732. While it did not do so explicitly, I believe that *Sluciak* effectively abrogated *West*

*Whiteland*, at least to the extent that *West Whiteland* can be read to require that title and use-related questions that are raised solely in connection with determining just compensation nonetheless must be raised in the first instance in preliminary objections to the declaration of taking.[7]

Realizing belatedly that they had failed to apprehend the full effect of PennDOT's taking, the Szabos chose the best of only bad options. Presumably recognizing that their issues concerning the imposition upon their interests in parcels 1 and 9 entailed factual claims that PennDOT would dispute, they did not ask the viewers to answer those questions. Instead, they filed a petition for an evidentiary hearing before the Common Pleas Court. This necessarily improvisational step did not depart substantially in effect from a hypothetical scenario in which they discovered the issue with parcels 1 and 9 before filing their petition for the appointment of viewers and included in their petition factual assertions about PennDOT's incursions upon interests not delineated. PennDOT then would have been on notice of the factual claims and could have filed preliminary objections to that petition pursuant to 26 Pa.C.S. § 504(d). At that point, or upon the Szabos' filing of an answer to the preliminary objections, the dispute would have come to the fore and the Court of Common Pleas would have stepped in to resolve the issue, as anticipated in Chapter 5 of the Code.

---

[7] While *West Whiteland* often is cited in tandem with *Appeal of Bernstein*, I do not believe that the latter case must suffer the same fate. While *Appeal of Bernstein* cited principles relied upon in *West Whiteland*, waiver was found for failure to file timely preliminary objections where condemnees sought to challenge the declared taking itself, rather than merely to secure greater compensation. *See Appeal of Bernstein*, 535 A.2d at 1212-13.

The fact remains that the Szabos seek not to adjudicate title or the validity of the taking, properly the province of Chapter 3 of the Code, but only to challenge the compensation for the property interests that PennDOT actually took, which is governed by Chapter 5. For that reason alone, I agree with the OAJC that the Szabos are entitled to a judicial determination by the Common Pleas Court concerning the nature and scope of PennDOT's taking. However, I disagree that our holding in that regard can be reconciled with *West Whiteland*.

Finally, while affirming the Commonwealth Court's decision in substantial part, the OAJC elaborates on, or perhaps departs from, the Commonwealth Court's proposed disposition. While the Commonwealth Court remanded with instructions to the trial court "for an evidentiary hearing consistent with this opinion," it left unclear whether it intended that the trial court thereafter assess compensation in the first instance or that the trial court, upon completion of the evidentiary hearing, relinquish the matter to the board of viewers for the determination of compensation in light of its findings. *Szabo v. Commonwealth, Dep't of Transp.*, 159 A.3d 604, 609 (Pa. Cmwlth. 2017). Clarifying that the Common Pleas Court, upon completion of the evidentiary hearing, should pass the case to the board of viewers to determine just compensation, the OAJC's mandate is most consistent with the Code's intended procedure. *See* OAJC at 21.

Case law provides scant guidance in this regard, but what there is, viewed in light of the Code's design, supports the OAJC's approach. In *Millcreek Twp. v. N.E.A. Cross Co.*, 620 A.2d 558 (Pa. Cmwlth. 1993), the Commonwealth Court considered an alleged *de facto* taking. When such a claim is raised in a petition for the appointment of viewers and disputed by preliminary objections, a dispute concerning the fact and scope of the

infringement arises, which by statute must be resolved by the Court of Common Pleas. 26 Pa.C.S. § 504(d)(5). The *Millcreek* court explained that, if the court determines that a *de facto* taking has occurred, "the case is then sent to a board of viewers to determine damages." *Millcreek*, 620 A.2d at 560 (citing *In re Ramsey*, 375 A.2d 886 (Pa. Cmwlth. 1977)).

In this case, the parties dispute that the declaration and plan that PennDOT provided the Szabos contained any errors pertaining to ownership or the relevant scope of the project. These and any corollary questions concerning the precise contours of the property actually owned by the Szabos and the degree to which PennDOT imposed upon those interests must be resolved before the viewers can fulfill their function. The statutorily-designated body to resolve that fact-intensive question is the Court of Common Pleas, whose findings will provide the information necessary for the viewers to assess compensation in the first instance.[8] For these reasons, I join the OAJC's disposition of the case and its mandate, notwithstanding my respectful disagreement with regard to aspects of its analysis.

Justice Todd joins the concurring opinion.

---

[8] While the concept of a *de facto* taking recurs frequently in the parties' arguments and the OAJC's account thereof, whether such occurred in this case lies outside the questions upon which we granted review. *See Szabo v. Commonwealth, Dep't of Transp.*, 172 A.3d 1109-10 (Pa. 2017) (*per curiam*); *see* OAJC at 10. If such a determination must be made, it is for the Common Pleas Court, on remand, as part of its fact-finding role in furtherance of the board of viewers' determination of just compensation.